**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Danny R. WARTERS, Defendant–Appellant.**

**No. 89–2155**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Sept. 29, 1989.

---

Roland E. Dahlin, II, Federal Public Defender, Marjorie A. Meyers, Houston, Tex., for defendant-appellant.

Frances H. Stacy, Asst. U.S. Atty., Paula Offenhauser, John Crews, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Danny R. Warters (Warters) pleaded guilty to a charge of misprision of felony, 18 U.S.C. § 4, and was sentenced to three years' confinement, to be followed by a one-year term of supervised release, and a $50 special assessment. He brings this appeal, raising only challenges to his sentencing. We remand.

## Facts and Proceedings Below

Warters was initially charged in a two-count indictment. Count one charged a conspiracy, from August 16, 1988 to September 8, 1988, in the Southern District of Texas and elsewhere, between Warters, James Joseph Yocono, Denver Lee Wright, Lloyd Donald Hailey, and unnamed others to import more than 100 kilograms of marihuana into the United States from Mexico, contrary to 21 U.S.C. §§ 963, 952(a), and 960(b)(2). Count two charged that in the same period and places, Warters, Yocono, Wright, Hailey, and unnamed others conspired to possess with intent to distribute more than 100 kilograms of marihuana, contrary to 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).

Pursuant to a plea agreement with the prosecution, Warters pleaded guilty to a criminal information charging misprision of felony, 18 U.S.C. § 4, in that on September 8, 1988, Warters, in the Northern District of Ohio, "having knowledge of the actual commission of a felony cognizable by a court of the United States, namely a conspiracy to possess with intent to distribute a quantity of marijuana in the amount of 20 pounds between James Joseph Yocono, Denver Lee Wright, Lloyd Donald Hailey, and Danny R. Warters, did not as soon as possible make known the same to" the authorities. The plea agreement called for dismissal of the indictment as to Warters and for Warters to waive, *inter alia*, venue rights, to cooperate with the prosecution respecting its case against his co-defendants. The agreement also indicated that for sentencing guidelines purposes, Warters should be entitled "to the benefits of acceptance of responsibility" but "not ... to any further reduction in his sentencing guidelines 'score' for 'minor' or 'minimal' participation." The statement respecting minor or minimal participation appears to have been made in recognition of the sentencing guidelines provision that such adjustments are "normally inapplicable" to misprision "because an adjustment for reduced culpability is incorporated in the base offense level." *See* Guidelines § 2X4.1, application note 2.

During the December 2, 1988 hearing at which Warters' guilty plea was accepted, the plea agreement was disclosed, and the court advised Warters that the court was not bound by the agreement even were it to accept the plea. At this hearing, the prosecution in its statement of facts supporting the plea recited that Warters was "also a member of the conspiracy which had overt acts committed here within the Southern District of Texas, in the Northern District of Ohio Mr. Warters furnished $20,000 for the purchase of approximately 20 pounds of marijuana, which he was going to then distribute," and Warters' response, answering the immediately following inquiry of the court respecting his having "failed to report that to an authority when you knew that a crime was being committed," can be understood as indicating Warters' agreement to the prosecutor's statement as well as the court's.

Sentencing was set for February 10, 1989, and in the interim, the presentence report (PSI) was submitted. It determined an offense level of 15 and a criminal history category of I, producing a guideline imprisonment range of eighteen to twenty-four months. It noted that no information was identified "which would warrant a departure from the guidelines in this case."

Of particular significance here was the offense level determination. Under the guidelines, the base offense level for misprision of felony is "9 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 19." *Id.* § 2X4.1.[1] The PSI accordingly calculated the offense level for the underlying conspiracy. Under Guidelines § 2D1.4, for a controlled substance conspiracy, "the offense level shall be the same as if the object of the conspiracy ... had been completed," and application note 1 provides that for "an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate

the applicable amount." The PSI thus turned to Guidelines § 2D1.1(a)(3) which governs drug manufacturing, importing, exporting, or trafficking offenses (including possession with intent to commit those offenses) under 21 U.S.C. §§ 841 and 960, and which in turn refers to the drug quantity table. From the drug quantity table, the PSI chose the base offense level of 26, which is appropriate for offenses involving 100 to 399 kilograms (approximately 220 to 880 pounds) of marihuana. It then deducted nine points as appropriate to misprision, and a further two points for acceptance of responsibility (Guidelines § 3E1.1(a)), and arrived at the above-noted adjusted offense level of 15.

The PSI based its application of the drug quantity table on the basis that the underlying offense—the conspiracy, presumably that to possess marihuana with intent to distribute it—involved 500 pounds (or about 227 kilograms). It recognized, however, that the information alleged the underlying offense as a 20 pound conspiracy, and that Warters' counsel had submitted a sentencing statement in essence taking the position that all he was involved with or knew about was 20 pounds, or approximately 9 kilograms of marihuana.[2] The PSI then calculated that if this smaller quantity were determinative, the conspiracy base offense level would be 14, and with deduction of nine points for misprision and two points for acceptance of responsibility, would produce an adjusted offense level of 3, which, with a criminal history category of I, would result in a guideline imprisonment range of zero to three months.

In the subsequent "sentence recommendation" portion of the PSI, a twenty-one month sentence is recommended, it being stated that Warters "was a member of a group that had negotiated for, and completely expected to receive, 500 pounds of marihuana" and that he "was well aware of his involvement in the instant offense."[3]

---

**1.** Application note 1 defines "underlying offense" as "the offense as to which the misprision was committed."

**2.** The PSI noted that Warters had no other objection to the PSI and that the government had no objections.

**3.** While the body of the PSI utilizes a criminal history category I, the "sentence recommenda-

The initial portion of the PSI recounts the facts involved, which we summarize as follows: Yocono contacted a confidential informant of the Drug Enforcement Administration (DEA) stating that he was interested in purchasing a large quantity of marihuana. On August 20, 1988, the informant called Yocono, then in Akron, Ohio, from the DEA office in Brownsville, Texas, telling Yocono that he had located a source of supply and the source wished to meet with Yocono to discuss the details. On August 22, 1988, an individual named Breach met with the informant and a DEA agent in Brownsville. He agreed to purchase 500 pounds of marihuana at a price of $375 per pound. The agent informed Breach that he would have to provide a vehicle to transport the marihuana from Texas to Ohio.

Breach delivered a 1988 Ford Bronco to the agent in Harlingen, Texas on September 1, 1988. The informant telephoned Yocono, who agreed to surrender title to the Bronco to cover transportation costs, and further agreed to pay $97,000 as a down payment on the marihuana. The bill of sale indicated the Bronco was owned by Yocono and Wright, whom Breach indicated was aware that the vehicle was to be used to transport marihuana.

The agent and the informant flew into Cleveland on September 8, 1988, and, as Yocono had told them on September 6 that they would be, they were met by a man named "Dan," later identified as Hailey. Hailey explained that his people were experiencing some money problems, but assured the agent and the informant that he and his friends wished to go through with the deal. Hailey promised to contact the agent at the Sheraton Hopkins Hotel, and before leaving gave him a hand-drawn map showing the location of the warehouse to which the marihuana was to be delivered.

Hailey met with Yocono at his home in Akron and then went to the Red Pepper Steak House to meet Warters. Hailey and Warters rented several hotel rooms in Medina, Ohio, and then drove to the Cleveland airport in separate cars. Hailey and Warters met the informant and the agent at the Sheraton Inn. Hailey showed the agent $30,000 in United States currency, and Warters showed the agent $20,000 in United States currency. Hailey provided the agent with the title to the Ford Bronco. Arrangements were made for the delivery of the marihuana to the warehouse, and Hailey and Warters were arrested as they left the Sheraton. Yocono and Wright were arrested later.

In his referenced sentencing statement, Warters asserts that he planned "to purchase 20 pounds of marihuana from Hailey" and "to resell the marihuana on his own," and further that:

> "[T]he question of defendant's knowledge of the entire amount of marihuana involved in this case, is raised. If this case would have gone to trial, the defendant would have produced evidence that his dealings in this matter were with Lloyd Hailey, a codefendant herein. Hailey approached defendant with the proposition of purchasing marihuana and defendant agreed to purchase 20 pounds. Hailey informed defendant that the marihuana had arrived, but that prior to delivery, the sellers needed to see the money for the 20 pounds. Defendant flashed the $20,000.00 to undercover agents, believing it was for the delivery of the 20 pounds, not 500 pounds. There is no question that the entire deal as far as Hailey was concerned was for 500 pounds. Defendant never had any dealings with any agent or informant here."

At the February 10 sentencing hearing, the court, after ascertaining that Warters had examined the PSI, asked him if there was anything in it "that you did not find to be correct." Warters replied in the affirmative, and his counsel then stated, "[W]e have filed Defendant's Sentencing State-

tion" section, without discussion or explanation, uses a category II and, evidently as a consequence, a guideline range of twenty-one to twenty-seven months. This was not alluded to by anyone at the sentencing hearing, and on this appeal, all parties have treated the matter as if the PSI were correctly based on criminal history category I as being the applicable category under the guidelines.

ment in regards to the amounts." The court merely observed, "I was given the benefit thereof." Warters' counsel then pointed out that Warters had continued to cooperate with the government, and the court stated it would consider that in Warters' favor. After Warters' allocution—in which he expressed his regret for what happened and explained it as resulting from greed—and some general comments by the court concerning drug offenses, the court proceeded to sentence Warters to three years' confinement—the statutory maximum under 18 U.S.C. § 4—giving only the following explanation:

> "The Court did exceed the guidelines. I will make reference that the matter of the actual offense, itself, far exceeds anything you would have received now that this matter has been reduced to a mispris[i]on. The ends and objectives of the guidelines have been served."

The court at no time made any finding concerning the amount of marihuana Warters had knowledge of or was involved with; nor did the court, apart from the above-quoted statement, explain its departure from the guidelines or state what it considered the applicable guideline range to be.[4]

### Discussion

■ Warters appeals, complaining that the district court violated Fed.R.Crim.P. 32(c)(3)(D) and Sentencing Guidelines § 6A1.3 by its failure "to make any findings concerning the quantity of marijuana involved or the applicable guideline range." In its brief, the government states that it "concedes, as it must, that the district court's stated reasons are insufficient to constitute reasoned grounds for departure consistent with the Sentencing Guidelines" and that "the disputed facts were not clearly resolved. On remand for resentencing, the court should make a determination of the quantity of drugs implicated in the crime."

We accept the government's concession and remand.

■ We note that, whether or not there is a departure from the guidelines, where there are disputed facts material to the sentencing decision, the district court must cause the record to reflect its resolution thereof, particularly when the dispute is called to the court's attention. As we said in the closely analogous case of *United States v. Burch,* 873 F.2d 765 (5th Cir. 1989), which involved a similar relevant quantity dispute (*see id.* at 766–67), "[t]he guidelines explicitly require that the sentencing court resolve disputed sentencing factors, without regard to whether the court ultimately determines that a departure from the guidelines is warranted." *Id.* at 767. Further, the court should normally make an express determination of the applicable guideline range, even if it determines that a departure is warranted. *See United States v. Roberson,* 872 F.2d 597, 608 (5th Cir.1989). And, where the court does depart, it must also give a reasoned explanation, consistent with the guidelines, justifying its departure. *Roberson,* 872 F.2d at 601; *Burch,* 873 F.2d at 768–69.

■ Here, while there was apparently no dispute that there was a conspiracy involving some 500 pounds of marihuana, the extent to which Warters was involved with any more of it than 20 pounds was disputed, and this dispute was highly relevant to sentencing. Application note 1 to section 2D1.4 states that "[i]f the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy *that was known to the defendant or was reasonably foreseeable*" (emphasis added). We think it evident that the same rule should apply where the defendant is convicted of misprision of a conspiracy. Thus, application note 1 to Guidelines § 1B1.3, dealing with conduct to be considered in determining the base offense level where more than one base offense

---

**4.** The court's written judgment and sentence also dismisses the indictment as to Warters pur-suant to the plea agreement.

level is specified (§ 1B1.3(a)(i)), states that "[i]f the conviction is for ... misprision" such conduct for this purpose "includes all conduct relevant to determining the offense level for the underlying offense *that was known to or reasonably should have been known by the defendant*" (emphasis added).

■ The information charged that the underlying offense was a 20 pound conspiracy. For guideline purposes, however, the district court is not limited by the quantity of drugs mentioned in the charging instrument. *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.1989); *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989). To determine—for purposes of calculating the misprision base offense level—the base offense level of the conspiracy as to which the misprision was committed, it was clearly proper under Guidelines § 1B1.3(a) to consider the actual amount involved in the conspiracy (and in offenses by defendant that were part of the same course of conduct or common scheme or plan as the offense of conviction, if they were of a character that would require grouping of multiple counts under Guidelines § 3D1.2(d)), *see United States v. Taplette,* 872 F.2d 101 (5th Cir.1989); *United States v. Guerrero,* 863 F.2d 245 (2d Cir.1988), *provided that* the defendant knew, or should have known (or foreseen) that at least such amount (or some amount not less than the minimum amount giving the same base offense level in the guidelines' drug quantity table) was involved in the conspiracy. On remand, the district court will need to expressly determine not only the actual amount involved in the entire conspiracy—apparently 500 pounds—but also the amount (at least to the extent of placing it within one of the ranges provided in the drug quantity table) which defendant knew or should have known or foreseen was so involved. This determination is required to appropriately fix the guideline range for this misprision offense, and the determination needs to be made even if it is ultimately decided to depart from the guideline range. We further note that the record here would support a finding that the defendant knew or should have known that the conspiracy related to more than 100 kilograms.

Both the government and Warters assume that, regardless of the findings made, the guideline range will not exceed eighteen to twenty-four months as calculated by the PSI. The district court, however, sentenced Warters to three years. The government accordingly requests that, in accordance with *United States v. Lopez,* 875 F.2d 1124, 1127 (5th Cir.1989), we advise as to potential grounds for guideline departure.

■ We agree that under this record, a three-year sentence must be regarded as a guideline departure. It might be contended that Guidelines § 1B1.3(a)—especially after its amendment effective January 15, 1988, *see Taplette,* 872 F.2d at 105, 106—authorizes Warters' base offense level to be computed by reference to the conspiracy alone, without the nine point misprision reduction of section 2X4.1, *provided only* that the district court determine, with adequate record support, that Warters was indeed a member of the conspiracy and guilty of *that* offense.[5] Depending on findings as to the amount of marihuana involved in the conspiracy and which Warters then knew (or should have

---

5. As the information to which Warters pleaded guilty alleged that the felony to which his misprision related was a conspiracy among him and others, such a finding would be supported by the record. Record support is also found in Warters' admissions at the plea hearing respecting the government's recital of the facts, which stated he was a member of the conspiracy. Of course, these portions of the record only show a conspiracy respecting 20 pounds of marihuana.

We do not, however, regard this case as one in which "a stipulation ... specifically establishes a more serious offense" within the meaning of Guidelines § 1B1.2(a). Warters' guilt of misprision of the conspiracy did not depend on his having been a member of the conspiracy; nor was there any formal stipulation of his guilt of conspiracy. The plea agreement does not say anything about Warters' being part of the conspiracy. Further, due to the quantity stated in the information, a guideline range encompassing three years could not in any event be achieved under the stipulation provisions of section 1B1.2(a). *Cf. United States v. Garza,* 884 F.2d 181, 184 (5th Cir.1989).

known or foreseen) to be so involved, a base offense level (after a two point adjustment for acceptance of responsibility) of 24 could be achieved, which, with a criminal history category I, would produce a guideline range of fifty-one to sixty-three months, which would, however, be capped at the statutory maximum of three years.[6] However, we conclude that it is not proper to determine the base offense level in that manner. Guidelines § 1B1.3(a) does allow a wide range of conduct related to the offense of conviction to be considered, but, with respect to determining the base offense level—which is what is under consideration here—this is only "where the guideline specifies more than one base offense level." § 1B1.3(a)(i). We believe that the quoted language means that the referenced character of information can be considered for the purpose of choosing *among* available base offense levels. The background commentary to section 1B1.3(a)(2) states: "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." However, under Guidelines § 2X4.1, although the base offense level will vary with that applicable to the underlying offense, nevertheless in all instances there must then be a nine point reduction (but with a resulting base offense level not less than 4 nor more than 19). To disregard this nine point reduction is to choose a base offense level not specified in the guidelines. Moreover, as noted below, the offense of misprision normally contemplates that the accused is not a party to the offense as to which the misprision is committed. Thus, for this rather unique offense, we conclude that an offense level based only on the accused's guilt of the underlying offense, and without the misprision nine point reduction, constitutes a guideline departure where the only charge is under 18 U.S.C. § 4.

This is not to say, however, that Warters' guilt of the underlying conspiracy cannot justify a *departure* from the guidelines. The background commentary to section 1B1.3 states that "[t]his section prescribes rules for determining the applicable guideline sentencing range, whereas § 1B1.4 ... governs the range of information that the court may consider in adjudging sentence once the guideline sentencing range has been determined.... The range of information that may be considered at sentencing is broader than the range of information upon which the applicable sentencing range is determined." Guidelines at 1.18, 1.19. Under section 1B1.4, the court at sentencing may consider "any information concerning the ... conduct of the defendant, unless otherwise prohibited by law." *See also* 18 U.S.C. § 3661. The background commentary to section 1B1.4 states in part:

"A court is not precluded from considering information that the guidelines do not take into account. For example, if the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range. In addition, information that does not enter into the determination of the applicable guideline sentencing range may be considered in determining whether and to what extent to depart from the guidelines." Guidelines at 1.20.

Accordingly, we conclude that at sentencing the court could consider Warters' guilt of the underlying conspiracy in determining whether to depart from the guidelines. Under 18 U.S.C. § 3553(b), the court may depart from the guidelines if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

---

**6.** This would assume that Warters knew, or should have known or foreseen, that the conspiracy involved between 100 and 399 kilograms (about 220 to 880 pounds) of marihuana, which would produce a conspiracy base offense level of 26, and, after adjustment for acceptance of responsibility, à base offense level of 24.

A misprision defendant's personal guilt of the underlying offense is, we determine, a circumstance not taken into account in formulating the misprision guidelines under section 2X4.1. Misprision is normally not committed by one of the perpetrators of the underlying offense. While such a misprision is not theoretically impossible, it is certainly not "in the traditional mold." *United States v. Davila,* 698 F.2d 715, 720 (5th Cir.1983). *Cf.* 2 LaFave & Scott, *Substantive Criminal Law* § 6.9(b) at 175 (at common law one could not be guilty of misprision "if he was accountable for the [underlying] felony as either a principal or accessory before the fact."). Moreover, successful prosecution for misprision of one guilty of the underlying offense will usually be impossible because of the defense that the failure to make known was an exercise of the constitutional right to refrain from self-incrimination, although we have held that such a defense may be waived by a guilty plea. *Davila,* 698 F.2d at 719. These circumstances strongly suggest that section 2X4.1 assumes that the misprision defendant is *not* guilty of the underlying offense. Indeed, that is obviously why section 2X4.1 provides for a nine point reduction from the underlying base offense level. As the application note 2 to section 2X4.1 states, "adjustment for reduced culpability is incorporated in the base offense level." But clearly there is no "reduced culpability" if the defendant is also guilty of the underlying offense.

Accordingly, we conclude that the district court may depart from the misprision guideline range if it makes a specific finding that Warters was guilty of the underlying offense.[7] It should also, in that event, expressly determine (and make the findings on disputed facts necessary to such determination) the applicable guideline range for the underlying offense, to provide an appropriate bench mark against which to judge the reasonableness of the sentence. *Cf.* Guidelines § 4A1.3 (use of next higher criminal history category when applicable category found inadequate); *Roberson,* 872 F.2d at 608 (court should determine guideline range, even if it departs, for guideline range provides the relevant point of reference).[8]

Finally, we *sua sponte* note one additional matter that should be addressed by the parties and the district court on remand. There is, at the very least, a serious question whether the present information is adequate to state a violation of 18 U.S.C. § 4, in that it does not allege any concealment by the defendant, but merely that with knowledge of the underlying felony (the conspiracy of which he was a part) he "did not as soon as possible make known the same to" the proper authorities. The statute speaks in terms of one who "conceals *and* does not as soon as possible make known." 18 U.S.C. § 4 (emphasis added). *See Bratton v. United States,* 73 F.2d 795, 797–98 (10th Cir.1934). Concealment—indeed an affirmative step to conceal—is a required element; mere failure to make known does not suffice. *United States v. Johnson,* 546 F.2d 1225, 1227 (5th Cir.1977). Moreover, here the Fed.R.

---

7. Arguably, the district court intended to do so by its reference to "the matter of the actual offense, itself." Surely, however, it would have been preferable to expressly state that *Warters* was guilty of the conspiracy (not just that there was a conspiracy). But even if such a finding could properly be inferred from the district court's comments and the circumstances of the case (*e.g.,* the wording of the information), nevertheless the district court would still have been in error for failing to make an express finding on the disputed matter of the quantity involved and which Warters knew (or should have known or foreseen) was involved.

8. Warters also asserts that the district court considered his age and economic status in upwardly departing. This argument is meritless. At the sentencing hearing, the court expressed bemusement at Warters' involvement:

"I have a question. It's mind boggling to me. You know I see persons like you and Mr. Hailey come in here. You have things going for you. And ordinarily I get persons younger. Never had the same opportunity as both of you have had. Here is my question. What do you people think happens to people who get involved?"

There is no indication that the district court took Warters' status into account in passing sentence. In this respect, the present case is unlike *Burch,* 873 F.2d at 768–69, where such factors were improperly taken into account.

Crim.P. 11(f) showing of factual guilt appears likely deficient for the same reason, as it contains no indication of concealment, but only of failure to make known. *See Johnson.*

The cause is accordingly remanded for further proceedings not inconsistent herewith.

REMANDED.