**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Ricky KINSEY,**
**Defendant–Appellant.**

**No. 89–1675.**

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1990.

James Ricky Kinsey, Fort Worth, Tex., pro se.

LeRoy Morgan, Jahn and Richard L. Durbin, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio Tex., for U.S.

Before REAVLEY, DUHÉ, and WIENER, Circuit Judges.

DUHÉ, Circuit Judge.

Defendant James Ricky Kinsey, who pleaded guilty to possession of amphetamine with intent to distribute, appeals his conviction. Kinsey contends that he received ineffective assistance of counsel in violation of the sixth amendment. Because Kinsey failed to raise this issue in the trial court, we cannot evaluate it on appeal. We

therefore dismiss that portion of the appeal without prejudice to his right to raise the issue in a habeas corpus proceeding.

Kinsey further argues that in determining his sentence, the district court erred by considering information he disclosed to a probation officer in a presentencing interview. We cannot determine from the record what information the government already possessed from other sources and what information came solely from Kinsey. We therefore remand so that the district court can hear evidence on that issue.

Police officers discovered in Kinsey's home 72.41 grams of amphetamine, which the officers originally believed to be methamphetamine. The officers also found marijuana, electronic scales, $1,500 in cash, and a pistol. Kinsey was charged with unlawful possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988).

On the advice of his attorney, Kinsey entered into a written plea bargain with the government. He agreed to plead guilty to a superseding information charging him with unlawful possession of amphetamine with intent to distribute. In the plea agreement, Kinsey promised to "cooperate fully and give a complete, truthful statement to law enforcement authorities concerning his possession of amphetamine with intent to distribute." In return, the United States agreed to refrain from further prosecuting Kinsey for other violations.

After Kinsey entered his guilty plea, a probation officer conducted the usual presentencing interview with him. During this interview, Kinsey estimated that he had sold about five ounces of amphetamine each month for about twenty months. His attorney did not attend this interview.

After the interview, the probation officer determined that, for sentencing purposes, the relevant drug quantity was 2.8 kilograms. Based on that quantity, he calculated the base offense level as level 28, which he adjusted to level 30 because of Kinsey's possession of a firearm. The base offense level for 72.41 grams, the quantity

of amphetamine found in Kinsey's home, is 16 (18 if adjusted for the firearm).

Kinsey first complains that he received ineffective assistance of counsel in violation of the sixth amendment because his attorney failed to draft his plea agreement to protect him from incriminating himself and failed to attend the presentencing interview. Kinsey next contends that the government, in increasing his base offense level from 18 to 30, improperly relied on information he provided to the probation officer. The government argues that Kinsey's admissions in the interview merely corroborated information it had already obtained from independent sources.

*Ineffective Assistance of Counsel*

█ In this circuit the general rule is · that a claim of ineffective assistance of counsel cannot be resolved on direct appeal unless it has been first raised before the district court. *See United States v. Higdon,* 832 F.2d 312, 313–14 (5th Cir.1987), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988); *United States v. McClure,* 786 F.2d 1286, 1291 (5th Cir. 1986); *United States v. Freeze,* 707 F.2d 132, 138–39 (5th Cir.1983). This rule is not merely a procedural technicality. Unless the district court has developed a record on the defendant's allegations, we cannot fairly evaluate the merits of the claim. On direct appeal we have occasionally resolved claims of inadequate representation, but only when the record has provided substantial details about the attorney's conduct. *See, e.g., United States v. Phillips,* 664 F.2d 971, 1040 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Brown,* 591 F.2d 307, 310 (5th Cir.), *cert. denied,* 442 U.S. 913, 99 S.Ct. 2831, 61 L.Ed.2d 280 (1979). In the present case, the only details to which we have access are Kinsey's assertions in his brief.

According to Kinsey, his attorney knew before the presentencing interview that he had distributed significantly more than 72.4 grams of drugs. Kinsey argues that he received inadequate representation because his attorney failed to include in the plea agreement a provision that information

supplied solely by Kinsey could not be used to enhance the base offense level and because his attorney failed to appear for the presentencing interview.

We do not know the content of the negotiations between defense counsel and the prosecutor. We do not know whether the government would have proceeded with the plea agreement if counsel had insisted on including the provision about Kinsey's admissions. Accordingly, we decline to address the merits of Kinsey's ineffective assistance claim. We dismiss this portion of the appeal, however, without prejudice to Kinsey's right to raise the issue in a habeas corpus proceeding pursuant to 28 U.S.C. § 2255 (1988).

If Kinsey chooses to proceed with a collateral challenge, however, he should be aware that several controlling issues of law have already been decided by this circuit. Reasoning that a presentencing interview is not a critical stage of the proceedings, this circuit has refused to recognize a right to counsel during a defendant's presentencing interview with a probation officer. *See United States v. Woods*, 907 F.2d 1540, 1543 (5th Cir.1990); *Brown v. Butler*, 811 F.2d 938, 940–41 (5th Cir.1987); *cf. Baumann v. United States*, 692 F.2d 565, 575–76 (9th Cir.1982) (holding that there is no requirement that a defendant be warned of his right to counsel and his right to remain silent before "a routine, authorized presentence interview").

To succeed on any claim of ineffective assistance of counsel, a defendant must show that: (1) the attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that except for the attorney's unprofessional errors, the results of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674, 693–94 (1984). Specifically, to show sufficient prejudice in the context of a guilty plea, Kinsey must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have

pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985); *see Craker v. McCotter*, 805 F.2d 538, 541 (5th Cir.1986); *United States v. Gavilan*, 761 F.2d 226, 228 (5th Cir. 1985).

*Use of Defendant's Admissions in Determining Sentence Range*

The Federal Sentencing Guidelines contain a sentencing table that establishes applicable sentence ranges based on various offense levels and criminal history categories. *See* United States Sentencing Commission, *Guidelines Manual*, ch. 5, pt. A, at 5.2 (Oct.1988) [hereinafter *Guidelines*].[1] To establish the appropriate sentence range, the judge determines an offense-specific base offense level and then adjusts it according to case-specific factors. *See id.* § 1B1.1. The judge then correlates that level with the defendant's criminal history category to determine the appropriate sentence range expressed in months of imprisonment. *See id.*, ch. 5, pt. A, at 5.3.

For a drug-related offense, the main determinant of the base offense level is the quantity of drugs involved. *See id.* § 2D1.1(a)(3). In determining this quantity of drugs, a judge must consider "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2). The commentary to the guidelines explains specifically that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.* § 1B1.3 commentary at 1.20.

Kinsey contends that in determining his base offense level, the court improperly relied on self-incriminating information that he provided to the probation officer. He rests his argument on section 1B1.8(a) of the sentencing guidelines:

Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of

1. Kinsey's date of sentencing was July 10, 1989. The version of the sentencing guidelines in effect on that date included amendments effective October 15, 1988.

others, *and the government agrees that self-incriminating information so provided will not be used against the defendant*, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

*Id.* § 1B1.8(a) (emphasis added). Based on the language of Kinsey's plea bargain agreement, this section seems inapplicable. We find no express agreement by the government not to use self-incriminating information against Kinsey. Instead, the government agrees

> to refrain from prosecuting Defendant Kinsey for other Title 21 ... violations of which the United States is now aware, which may have been committed by [Kinsey]. That is, this action now pending is the extent of the Federal prosecution against Defendant ... based upon all facts at hand.

Despite the seemingly narrow language of the plea agreement, the government informs us in its brief that "the agreement not to prosecute implied a promise not to use Appellant's statements against him." In the light of the parties' mutual understanding of the meaning of their plea agreement, we cannot resolve the problem by concluding that the literal language of the agreement renders section 1B1.8(a) inapplicable.

Stipulating that section 1B1.8(a) applies to Kinsey's plea bargain agreement, the government argues that the term "government" in that section means prosecutors and investigators but not probation officers. Consequently, it argues, section 1B1.8(a) does not apply to self-incriminating information admitted to probation officers. Although this argument is clever, we do not believe that the drafters of the guidelines intended this indiscernible distinction. Certainly, this novel interpretation would be unforeseeable, and thus unfair, to the average defendant.

The Tenth Circuit has considered the application of sections 1B1.3 and 1B1.8(a) in the context of a court's reliance on a defendant's admissions to a probation officer. *See United States v. Shorteeth*, 887 F.2d 253 (10th Cir.1989). We decline at this time to consider that issue because another section of the guidelines may resolve the dispute in this case.[2]

Section 1B1.8(b) directs that "[t]he provisions of subsection (a) shall not be applied to restrict the use of information ... known to the government prior to entering into the cooperation agreement." *Guidelines*, § 1B1.8(b)(1). The government argues in its brief that Kinsey's admissions merely corroborated the more general information the government had learned from independent sources. The record, however, is silent regarding what the government already knew before the presentencing interview.

If, in fact, the government already possessed sufficient evidence to support a determination that the base offense level was 30, then Kinsey has not incriminated himself. Under those circumstances, there is no need to consider sections 1B1.3(a)(2) and 1B1.8(a). If, on the other hand, the increase in the sentence is based solely on admissions of the defendant to the probation officer, then the district court must consider the appropriate application of these sections and self-incrimination principles to the facts of this case.

We therefore remand to the district court so that it can hear evidence to determine what the government knew before the presentencing interview and to resolve the remaining issues in the case.

The sentence imposed by the district court is VACATED, and the appeal is DISMISSED in part and REMANDED in part for further sentencing proceedings consistent with this opinion.

2. We believe that the United States Sentencing Commission, and not this Court, is the most appropriate group to consider and resolve latent ambiguities in the guidelines. Unlike this Court, the Commission can provide uniform national interpretations of the guidelines. We leave the resolution of this potential conflict, then, until the time that it becomes necessary to reach that issue.