UNITED STATES of America,
Plaintiff–Appellee,

v.

Sam J. PIGNO, Defendant–Appellant.

No. 90–3476.

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1991.

Hillar C. Moore, III, Anthony J. Marabella, Jr., Marabella & Moore, Baton Rouge, La., for defendant-appellant.

Albert J. Winters, Jr., and Peter G. Strasser, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before RUBIN, SMITH, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Sam J. Pigno pled guilty to misprision of a felony, mail fraud, in violation of 18 U.S.C. § 4. In an upward departure from the sentencing guidelines, the district court sentenced him to 15 months imprisonment. He challenges the upward departure and its underlying bases; but, he failed to raise these issues in the district court. Accordingly, we review only for plain error; and finding none, AFFIRM.

I.

In November 1989, Pigno agreed to plead guilty to misprision of a felony, involving the sale by ROI, Inc., of educational related computer equipment to the Tangipahoa Parish School Board. In exchange, the Government agreed not to bring any other charges arising out of the transactions to which Pigno pled guilty or arising out of

any other facts which Pigno described to the government pursuant to the plea agreement. The agreement also provided:

This plea agreement is further predicated upon the fact that [Pigno] desires to assist the Government and State authorities and agrees to submit to interviews at all reasonable times and places as requested by Special Agents of the Government, other Government employees, attorneys for the Department of Justice[ ] investigating criminal matters, or State law enforcement officers. [Pigno] understands that he must be truthful and candid in any and every interview and answer truthfully and completely all questions posed. [Pigno] also agrees to appear at any Grand Jury proceeding and at any trial and testify completely and truthfully about the matters at issue therein. In doing so, [Pigno] agrees to waive his Fifth Amendment privilege against self-incrimination if called as a witness to testify in such proceedings. The Government agrees that any statements or testimony given by [Pigno] as of and following the date of this agreement, pursuant to questions asked by Government agents, prosecutors, or State enforcement officers and as a result of this agreement, will not be used against him nor will anything derived from the statements or such testimony be used against him.

In February 1990, Pigno was charged in a one-count indictment with violation of 18 U.S.C. § 4, misprision of a felony.[1] The indictment charged that

PIGNO, having knowledge of the actual commission of a felony, to wit: mail fraud, in violation of Title 18, United States Code, Section 1341, involving the receipt of a $10,000 cash payment by PIGNO, in consideration for the sale of computers to the Tangipahoa Parish School Board by ROI, did conceal and not make it known as soon as possible to any judge in civil or military authority; all in violation of Title 18, United States Code, Section 4.

In April 1990, in a Fed.R.Crim.P. 11 hearing, the district court accepted Pigno's guilty plea. At that hearing, Pigno was informed that if he entered a guilty plea: he could receive a maximum penalty of three years and a fine of $500 or both; that the Sentencing Guidelines applied to his case; and that the district court could impose a longer or shorter sentence than the Guidelines recommended if the district court found that the Guidelines did not adequately reflect other relevant facts concerning the crime to which he pled guilty.

At the Rule 11 hearing, the Government summarized its evidence against Pigno. The summary provided that in November 1987, George Richard, a consultant for the Tangipahoa Parish School Board, learned that discretionary grant money was available under the Job Training Partnership Act (JTPA), a federally funded program designed to prepare youth and unskilled adults for entering into the labor force and to afford job training to economically disadvantaged individuals. Richard determined that the grant money "would stand a better chance of being awarded" if a grant proposal specified that the funds would be used to purchase computer equipment from ROI, Inc.[2]

Richard then met with several school board superintendents who indicated they were interested in the grants and told them they were more likely to receive the grant if the computer equipment described in the grant proposal was purchased from ROI. Pigno, Superintendent of Education for the Tangipahoa Parish School System, was one

---

1. 18 U.S.C. § 4 provides:
   Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both.

2. According to the subsequent presentence report, ROI was owned by Charles Roemer, the father of the governor of Louisiana; and Richard had discussed with Charles Roemer "possible remuneration for [Richard's] efforts in seeing to ROI equipment being specified in the grant proposal."

of the superintendents that agreed to the proposal.

In the interim, Charles Roemer, see note 2, sold ROI to Frank Webb. Richard discussed the proposal with Webb, and Webb agreed that ROI would be able to supply the computer equipment. In December 1987, Tangipahoa Parish School Board received a discretionary grant of $116,471.23; and ROI supplied the computers.

After successfully completing the above transaction, Richard and ROI agreed that Richard would receive 40% of ROI's profit from the sale to Tangipahoa Parish for directing the grant to ROI. This arrangement was not disclosed to the Tangipahoa Parish School Board.

In April 1988, the JTPA offices in Tangipahoa Parish decided to purchase additional computers for a summer program; and Pigno suggested that they again use ROI. The JTPA director agreed. Webb again agreed to pay Richard the same percentage for this second transaction.

At approximately this same time (April 1988), Pigno asked Richard whether ROI would pay Pigno $10,000 for his assistance in bringing ROI business. Richard obtained an envelope from ROI that he believed contained $10,000 cash and gave the envelope to Pigno. Pigno acknowledged receiving $10,000 in cash.[3] The government's plea hearing summary also revealed that in June 1988, Pigno "caused the mailing of a document which acknowledged the receipt by Tangipahoa Parish of monies used in connection with the first grant and released the United States from further obligations in connection with the grant. Pigno never reported his receipt of the $10,000 to any person in civil and/or military authority."

At the Rule 11 hearing, the district court asked Pigno whether the Government's summary, as described above, was correct. Pigno responded that it was and then clarified that the statements were accurate as they related to Pigno but that as to some of the others, he had no personal knowl-

edge. The district court again asked Pigno if he wanted to plead guilty, and Pigno responded "yes". After determining there was a factual basis for the guilty plea, the court adjudged Pigno guilty with respect to Count 1 in the indictment and ordered a presentence investigation.

The presentence report (PSI) recounted essentially the same information the Government presented at the Rule 11 hearing. The PSI noted that the Guidelines provide a base offense level for misprision of a felony of "9 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 19," U.S.S.G. § 2X4.1; and that the underlying base offense level for fraud is 6 with an additional 2 points for "more than minimal planning." § 2F1.1(b)(2). Based upon an estimated dollar loss of $70,000, the PSI added 5 points to arrive at a base offense level for fraud of 13, to which Pigno did not object, and reduced it by the required 9 points, for a base level of 4; this base level was then increased by 2 points under Guidelines § 3B1.3 (adjustment for role in the offense) because "[a]s the Superintendent of Education for the Tangipahoa Parish School System, Pigno was in a position whereby his fraudulent conduct was an abuse of public trust." The PSI also recommended a 2 point reduction for acceptance of responsibility, resulting in a net total offense level of 4 and a guidelines imprisonment range of zero to four months. The PSI additionally noted that Pigno had been convicted in state court for an offense involving fraudulently claimed travel cost, thereby placing him in a criminal history category of 1 (at times referred to as "the Amite offense").

The PSI also discussed the impact of the plea agreement, stating:

> Arguably, Pigno could have been indicted and convicted on the actual mail fraud charge itself or, for that matter, under a federal bribery statute. Had either of those been the case, Pigno's guidelines [range] would have been significantly

---

**3.** Subsequently, the presentence report stated that Pigno recalled having received the $10,000 in two separate payments.

higher. Absent the reduction for acceptance of responsibility, his guidelines [range] for a mail fraud violation could have been 15 to 21 months while a bribery conviction might have brought a guideline range as high as 27 to 33 months.

Moreover, under the heading "FACTORS THAT MAY WARRANT DEPARTURE," the PSI stated that "[a] recent case by ... the Fifth Circuit holds that grounds for departure in a case involving the misprision of a felony may exist where the defendant could have been found guilty for the underlying offense itself," citing *United States v. Warters*, 885 F.2d 1266 (5th Cir.1989).

Neither the government nor Pigno objected to any portion of the PSI. Furthermore, at the subsequent sentencing hearing on June 20, 1990, the district judge asked Pigno whether he and his attorney had studied the PSI; and Pigno's attorney responded that they had. The court also referred to a letter from the Government that none of the parties had any objections to the PSI and asked if that was correct. Again, Pigno's lawyer responded affirmatively.

In imposing sentence, the court stated that

it is a very serious offense to have a breach of trust such as this and a recent case by the United States Court of Appeals for the Fifth Circuit held that ground[s] for departure in a case involving misprision of a felony may exist where the defendant could have been found guilty of the underlying offense....[citing *Warters* ].

Of course, what we have here is a misprision of a felony offense which you participated in yourself. We have had quite a number of very fine letters of recommendation which were sent in for you and you have had a long period of public service here until this particular matter took place.

We also have a recommendation of the U.S. Attorney's office. As I understand, in the Amite offense you received no type of imprisonment; is that correct? [Pigno's lawyer responded affirmatively.]

Is there anything further before sentencing? [Pigno's lawyer responded no.]

The district court then departed upward from the Guidelines and sentenced Pigno to 15 months incarceration, to be followed by one year supervised release, and imposed a $50 special assessment.

On July 2, 1990, twelve days after the sentencing hearing, the district court entered a form "STATEMENT OF REASONS FOR IMPOSING SENTENCE" (STATEMENT) and attached a further explanation. In the STATEMENT, the court adopted the PSI; found that an aggravating circumstance existed that was of a kind or degree not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines; determined that circumstance should result in a sentence different from that described by the guidelines; referenced the attachment; and noted that Pigno admitted receiving $10,-000 in cash.

In the attachment, the district judge again discussed the *Warters* holding and stated: "I have no doubt that [Pigno] could have been convicted of the underlying offense of mail fraud." The court also noted in the attachment that Pigno's offense was a public trust offense, referring to two sentences he recently had imposed on other public officials, and that Pigno's sentence on the state court offense was three years suspended sentence, five years probation, and restitution to the school board and sheriff's department. In the final paragraph of the attachment, the district judge stated: "In view of all of the above, I feel there is ample reason that Mr. Pigno should serve out his 15 month sentence."

## II.

"We will [affirm] the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous." *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989). As required by 18 U.S.C. § 3553, when the sentencing court departs from the guidelines, however, it "must articulate reasons justifying the upward departure." *United States v. Murillo*, 902

F.2d 1169, 1172 (5th Cir.1990). If those reasons are "acceptable and the extent of the departure reasonable," we will affirm the sentence. *United States v. Perez*, 915 F.2d 947, 948 (5th Cir.1990); *United States v. Mejia–Orosco*, 867 F.2d 216, 221, (5th Cir.) *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).

Pigno challenges the district court's upward departure primarily on three grounds; that the district court: (1) failed to make specific findings of fact to justify its upward departure; (2) lacked adequate facts to determine Pigno's guilt on the underlying offense of mail fraud, absent Pigno's immunized statements; and (3) erred in its justifications for the upward departure. He did not raise these issues in the district court.

As with any appeal from the district court, and as repeatedly stated, "[i]ssues raised for the first time on appeal 'are not reviewable by this Court unless they involve purely legal questions and failure to consider them would result in manifest injustice.'" *United States v. Cockerham*, 919 F.2d 286, 288 (5th Cir.1990) (quotation omitted). *See, also, United States v. Brunson*, 915 F.2d 942, 944 (5th Cir.1990); *United States v. Mourning*, 914 F.2d 699, 703 (5th Cir.1990) (factual determinations must be objected to at sentencing or they can not be raised on appeal).

Particularly relevant to our review here is this court's discussion in *United States v. Garcia–Pillado*, 898 F.2d 36 (5th Cir. 1990). There, the government appealed the district court's failure to impose a mandatory minimum sentence. *Id.* at 38. This court found that the issue raised involved only a question of law and that the government's contention was "doubtless correct," yet the court was "not convinced that the failure to consider it [would] result in manifest injustice." *Id.* at 39. In declining to consider the issue, this court stated that there was "no reason whatever for the government to have failed to call this mat-

ter to the district court's attention while the court still had the case under its jurisdiction or to then express its dissatisfaction with the sentence." *Ibid.*

The first time Pigno indicated any "dissatisfaction with what had transpired" in the district court was when he filed his notice of appeal. *Garcia–Pillado*, 898 F.2d at 40. As stated in *Garcia–Pillado*, "the proper administration of justice, particularly our now severely strained criminal justice system, will be unduly hampered by any rule or practice which allows sentences to be attacked on grounds raised for the first time on appeal in any but the most exceptional cases." *Id.* at 40.

### A.

We begin with the contention that the district court failed to make specific findings of fact to justify the upward departure.

### 1.

Pigno did not make any factual challenges in the district court, nor does he raise any disputed facts on appeal; indeed, he admits the accuracy of the facts presented to the district court. Accordingly, we do not consider whether the factual basis supporting the departure is accurate or sufficient. *See Mourning*, 914 F.2d at 704 (court refused to consider a challenge to the factual basis relevant to sentencing raised for the first time on appeal, when the defendant's failure to object resulted in the district court making no finding concerning the disputed point).[4]

### 2.

■ Pigno primarily focuses this contention on whether the district court's stated reasons for departure were sufficient.[5]

Before departing from the Guidelines, a district court must find "that there exists an aggravating or mitigating circumstance

---

4. "In a plea bargain case, this court will not review challenges to the factual basis of a guideline's applicability which has not been preserved by objection in the district court." *Mourning*, 914 F.2d at 704.

5. Pigno does not contend that he had insufficient notice or was deprived of an opportunity to respond.

of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Concomitantly, Guideline section 5K2.0 states:

Where, for example, the applicable offense guideline and adjustments do take into consideration a factor listed in this subpart, departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense.

As stated, on sentencing the district court expressly referred to the *Warters* holding and found Pigno guilty of the underlying offense of mail fraud. Again, the PSI, provided to Pigno and the government prior to sentencing, addressed upward departure and expressly referenced *Warters.* Pigno did not object either before, or during, sentencing. Accordingly, we review only for plain error.

As *Warters* and the district judge here recognized, the guideline range for misprision does not contemplate the "defendant's personal guilt of the underlying offense."

885 F.2d at 1275. In *Warters*, this court held that

the district court may depart from the misprision guideline range if it makes a specific finding that [the defendant] was guilty of the underlying offense. It should also, in that event, expressly determine (and make findings on disputed facts necessary for such determination) the applicable guideline range for the underlying offense, to provide an appropriate bench mark against which to judge the reasonableness of the sentence.

885 F.2d at 1275.

Analyzing the *Warters* requirements in turn: the district court determined that Pigno was guilty of the underlying offense in both the court's oral and written reasons;[6] there were no disputed factual issues; and the presentence report, adopted by the district court in his post-hearing STATEMENT, expressly provided the applicable guideline ranges.[7] Under our review for plain error, the *Warters* requirements were met.

### B.

Pigno contends next that the district court relied on facts that should have been

---

**6.** The stated reasons are perhaps too concise; but they were certainly sufficient under the applicable plain error review. *See United States v. Rogers,* 917 F.2d 165, 170 (5th Cir.1990) ("We do not subject the district court's form of words to such legalistic analysis that will either make a judge reluctant to sentence outside the guidelines when appropriate, or encourage a judge to state his reasons in a standardized manner."); *United States v. Lopez–Escobar,* 884 F.2d 170, 172–73 (5th Cir.1989) ("Sentencing judges ... need not insulate their findings against all possible misreadings, or preface their findings with ritualized incantations that partition reasons into specialized categories.... It is enough that ... the sentencing judge addresses the defendant's arguments and complies with applicable legal limits in a manner that is comprehensible when the sentencing hearing is viewed in the context of the record—including the presentence investigation—as a whole.") Here, the district court at sentencing confirmed there were no objections to the presentence report (which included a section on potential grounds for departure under *Warters* ) and stated that "a recent case by the ... Fifth Circuit held that grounds for departure in a case involving misprision of a felony may exist where the defendant could have been found guilty of the under-

lying offense itself.... Of course, what we have here is a misprision of a felony offense which you participated in yourself." This was further developed in the STATEMENT.

**7.** Pigno notes that 18 U.S.C. § 3553(c) requires a sentencing court to "state in open court the reasons for its imposition of the particular sentence" and implies that the district court's STATEMENT should not be considered in determining whether it complied with the requirements for departing from the guidelines. As noted, Pigno registered no objection to the STATEMENT with the district court. Accordingly, we do not address this contention. However, it should be noted that the district judge at the sentencing hearing sufficiently informed Pigno why the court imposed the sentence it did, including the departure, and adequately provided this court with a basis for review. The STATEMENT simply provided further elaboration; it did not change the basis for departure or raise new issues. *See United States v. Williams,* 891 F.2d 962, 963 n. 2 (1st Cir.1989) (reviewing court considered both oral and written reasons in reviewing bases for departure where sentencing judge "[i]n a subsequently-issued written memorandum ... reformulated [his reasons for departure] to some extent").

protected by immunity pursuant to the plea agreement. The bulk of the information the government presented at the Rule 11 hearing and contained in the presentence report appears to have been provided by Richard, the consultant for Tangipahoa Parish School Board. The crux of this issue is the district court's consideration of Pigno's admission that he received $10,000. From what we can glean from this sparse record, the Government had other sources (primarily Richard) for all the other information provided in the factual summary.

Because Pigno did not raise this issue in the district court, those facts that it could properly consider pursuant to the plea agreement and those facts that it should not consider were simply not presented to it. There is no record for this court to review. On this point, a purely factual, not legal, issue is at the threshold; and under the plain error standard, we can not review it.

Moreover, Pigno's acknowledgment that he received $10,000 was charged in the indictment, to which he pled guilty, and was referred to without objection or limitation at the Rule 11 hearing, in the presentence report, and in Pigno's own sentencing memorandum. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986) (defendant failed to object to prosecutor's statements allegedly made in violation of plea agreement, thereby waiving that promise, where "promise was broken, if at all, right before defendant and in open court"). Pigno now seeks a hearing before the district court to limit

the information it may consider in resentencing, despite ample opportunity to have done so both before and during sentencing. We will not further tax the district courts by granting such belated requests.[8]

## C.

██ Pigno also challenges the district judge's reference both to Pigno's offense as a breach of trust and to sentences the district judge had imposed on other public officials. Pigno argues correctly that his sentencing range already included a two level increase for his role as a person occupying a position of trust; however, it is apparent that the district court's upward departure was not based on that fact, but rather was based on Pigno's guilt of the underlying offense. As this court stated in *United States v. Martinez–Perez*, 916 F.2d 1020, 1026 (5th Cir.1990),

> if one of the determinations constitutes an incorrect application of the sentencing guidelines, and the other does not, it is by no means evident that the sentence was "imposed *as a result of* an incorrect application of the sentencing guidelines".... [T]he context of the court's remarks demonstrates that the court's primary concern was with the fact that [the defendant] had a substantial criminal history. The court's reference to [another factor] appears to be essentially a makeweight or minor, collateral reinforcement for its sentencing decision reached initially and overwhelmingly on the basis of [the defendant's] prior criminal history.

Perhaps more significant is that here, the record, although admittedly sparse, does indicate that the Government had other sources for the information presented to the district court—except Pigno's admission of receipt of $10,000, which Pigno included in his own sentencing memorandum. Even that admission does not stand alone as the sole evidentiary source that Pigno received $10,000—Richard relayed to the Government both that Pigno requested the $10,000 and that Richard acted as a liaison between ROI and Pigno and delivered to Pigno an envelope he believed contained the $10,000. Furthermore, Pigno pled guilty to an indictment charging his receipt of the $10,000.

---

**8.** In so holding, we note a recent decision by this court where on a similar argument, this court remanded the case for a determination of "what the government knew before the presentencing interview." *United States v. Kinsey*, 917 F.2d 181, 184 (5th Cir.1990). In *Kinsey*, the court refused to address another issue because the defendant raised it for the first time on appeal. However, *Kinsey* does not discuss the plain error standard of review on the immunity issue; therefore, perhaps some allegation of improper use of immunized testimony was made in the district court. Moreover, we do not know whether Kinsey had the same or similar opportunities as did Pigno to raise his objection; here Pigno had numerous opportunities to do so.

(emphasis by the court). In *Martinez–Perez*, this court reversed because it was clear that the sentence imposed was indeed the result of the district court's error. Here it appears that the sentence imposed was *not* the result of the alleged error, i.e. further increasing Pigno's sentence based on his position, but rather was imposed because of Pigno's guilt of the underlying offense and *Warters*.

But in any event, we note, once again, that Pigno did not raise this issue in the district court; there is no plain error.[9]

### III.

Finding no error in any of Pigno's points on appeal, we

AFFIRM.

**9.** Pigno states also in his brief that "[i]t appears that the Trial Court used the mail fraud guideline range, without a decrease for acceptance of responsibility in imposing the fifteen month term of incarceration." Because this was not objected to in the district court, not stated as an issue on appeal, and not briefed, we do not address it.

And, Pigno contends that Webb and Richard, who were sentenced by another district judge on the same factual summary as the one presented to the district judge in Pigno's case, only received probation and fines. This was noted both in the PSI addendum and by the district judge at sentencing. Accordingly, he argues that the district court violated the Guidelines' policy of promoting uniformity in sentencing. This argument is meritless; a district court has no duty to consider the sentences imposed on other defendants. *See, e.g., United States v. Harrison*, 918 F.2d 469 (5th Cir.1990); *United States v. Boyd*, 885 F.2d 246, 249 (5th Cir.1989).