No. 95-2047

United States of America,  *
                           *
            Appellee,      *
                           *  Appeal from the United States
     v.                    *  District Court for the
                           *  District of Minnesota.
Kevin Guy Harris,          *
                           *
            Appellant.     *

Submitted:  October 20, 1995

Filed:  December 1, 1995

Before FAGG, LAY, and HEANEY, Circuit Judges.


HEANEY, Circuit Judge.


     Appellant, Kevin Guy Harris, pleaded guilty pursuant to a plea
agreement to aiding and abetting the transfer of stolen property in
interstate commerce.  Harris appeals the district court's sentence, which
included an upward departure pursuant to section 5K2.0 of the guidelines
to punish Harris for his participation in a robbery that preceded his
offense of conviction.  We reverse and remand.


                           BACKGROUND


     On April 18, 1994, Harris was charged by indictment with conspiracy
to transfer stolen property in interstate commerce in violation of 18
U.S.C. §§ 371 and 2314 (count I) and aiding and abetting the transfer of
stolen property in interstate commerce in violation of 18 U.S.C. § 2314
(count II).  On January 18, 1995, Harris pleaded guilty to both counts in
the indictment after

negotiating a plea bargain with the government. The government agreed to file a downward departure motion pursuant to section 5K1.1 of the guidelines in return for Harris's cooperation in the prosecution of four other defendants. With respect to Harris's sentence, the parties' guideline calculations anticipated a total offense level of 13 and a criminal history category of IV, yielding a custody range of 24 to 30 months before any departure for substantial assistance to authorities.

During the presentence investigation, the parties to the plea agreement discovered that Harris's guilty plea to conspiracy exposed him to a significantly longer sentence than either party had intended under the agreement. A plea to count I of the indictment included a stipulation that Harris participated in an armed robbery and would have triggered use of the offense severity level assigned to armed robbery (level 26) rather than that assigned to the interstate transportation of stolen merchandise (level 13). The result of the inclusion of count I would have been a guideline range of 70 to 87 months, far above the range contemplated by the parties to the plea agreement. Harris and the government, therefore, reached a new agreement whereby Harris would withdraw his plea to count I and the government would dismiss count I at sentencing. The parties made a joint motion to withdraw Harris's plea to count I of the indictment and the court granted the motion by order dated February 14, 1995. The sentencing calculations in the amended plea agreement filed with the court were identical to those in the original plea agreement.

On April 7, 1995, the government dismissed count I as promised and the court sentenced Harris on count II. Prior to sentencing, Harris objected to the presentence report's recommendation that the court depart upward from the guideline range to account for Harris's role in the armed robbery. As anticipated in the plea agreement, the court found that the total offense level for count II was 13, that Harris's criminal history category was IV, and that

the guideline range was 24 to 30 months.  The court explicitly granted the government's motion for downward departure pursuant to section 5K1.1 of the guidelines and 18 U.S.C. § 3551.  In addition, however, the court departed upward pursuant to section 5K2.0[1] of the guidelines deeming Harris's participation in the armed robbery that preceded his offense of conviction to be relevant conduct not adequately reflected in the applicable guideline sentence.  Although the court made no specific findings as to the degree of either the upward or downward departure, they appear to have canceled each other out.  The court imposed a sentence of 30 months incarceration.  This appeal followed.

DISCUSSION

Up until the time of sentencing, this case presented an instance in which the plea bargaining process functioned smoothly for both parties.  The deal struck between Harris and the government is clear.  Their intentions were straightforward.  Moreover, each party fulfilled its obligations under the agreement.  Harris pleaded guilty to aiding and abetting the transfer of stolen property in interstate commerce.  He also fully cooperated with the government in its investigation, which substantially assisted in securing guilty pleas from Harris's co-defendants.[2]  The government

---

[1]Section 5K2.0 empowers a sentencing court to depart from the guidelines "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'"  U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

[2]The government summed up Harris's cooperation as follows:

I can only tell the court that Mr. Harris has been completely forthright with me, as far as I know. The information he has provided is accurate, as far as I know.  It has been confirmed by other sources other than Mr. Harris.  He was willing to testify. He gave us information that we didn't already have. And his

information did result in the plea of other defendants in this

3

dismissed count I of the indictment and made a motion to the court for a downward departure. Although both parties understood that the court was not bound by their guideline calculations,[3] once the court accepted the plea agreement, they had a reasonable expectation that the court would sentence Harris within the appropriate guideline range for his offense of conviction. At oral argument, the government explained that the court's decision to impose the 30-month sentence placed the government in the unusual and uncomfortable position of having to defend a sentence it never intended Harris to receive.

The sentencing court erred in considering conduct from the dismissed count as the basis for an upward departure under section 5K2.0 in clear opposition to the intentions of the parties as

---

case, and, in fact, in completely resolving the case by means of pleas of guilty all the way around.

Sentencing Tr. at 10.

[3]The plea agreement provided:

> The defendant understands that he will be sentenced in accordance with the applicable sentencing guidelines under the Sentencing Reform Act of 1984. The proper application of those guidelines is a matter solely within the discretion of the court. The above stipulations are not binding on the court. . . . The defendant understands and agrees that he may not withdraw his plea if the court rejects the above recommendations of the parties regarding sentencing factors, or denies the motion of the United States for a downward departure.

Amended Plea Agreement ¶ 6 at 5. It is important to note that in sentencing Harris, the court did not reject the sentencing factors as laid out in the plea agreement nor did it deny the government's motion for a downward departure. Instead, it departed upward, sua sponte, to account for the conduct embodied in the dismissed count of the indictment.

4

embodied in their plea agreement.[4]  A contrary rule would allow the sentencing court to eviscerate the plea bargaining process that is vital to the courts' administration.  As this court has recently noted:

> [W]hile the district court is not bound by stipulations entered into between the parties, plea bargaining is certainly a favorable way to dispose of many of the criminal cases present on the increasingly-crowded district court dockets.  Meaningful plea bargaining requires a degree of trust between defendants and prosecuting bodies.  Lest they desire to have trials on all criminal matters, district courts should be wary of conduct which tends to undermine the trust [defendants] place in the deals they strike with prosecutors.

United States v. Shields, 44 F.3d 673, 675 n.2 (8th Cir. 1995).  The plea bargain is recognized as an important part of our criminal justice system.  In exchange for a guilty plea, the government dismisses certain charges or downgrades the offenses charged.  In

---

[4]On appeal, the government contends that this court permits use of conduct from dismissed counts to support an upward departure pursuant to section 5K2.0 of the guidelines and cites to United States v. Karam, 37 F.3d 1280 (8th Cir. 1994), cert. denied, 115 S. Ct. 1113 (1995).  The government's reliance on Karam for this proposition, however, is totally misplaced.  In Karam, the defendant was subject to a ten-year mandatory minimum sentence that trumped any guideline sentence.  Although the court included drug quantities from dismissed counts to determine the defendant's offense level, the ultimate sentence it imposed constituted a significant downward departure from the otherwise applicable statutory minimum.  This court concluded that the extent of the departure was unreviewable.  Karam, 37 F.3d at 1285 (citing United States v. Albers, 961 F.2d 710, 712 (8th Cir. 1992)).  Two other facts further distinguish our situation from Karam.  First, Karam's lawyer did not object to the presentence report, which included the drug quantities from the dismissed counts in the total quantity.  Second, and most important, the court considered the conduct in the dismissed counts to be relevant conduct under section 1B1.3 rather than a basis for an upward departure under section 5K2.0.  The guidelines allow consideration of dismissed counts as relevant conduct within the meaning of section 1B3.1.  See id. at 1285.  Therefore, contrary to the government's assertion, Karam does not address the issue specifically raised by this case.

exchange for this benefit, the defendant often provides invaluable cooperation to the government. By its nature, plea bargaining involves certain risks to both parties. Permitting sentencing courts to accept a defendant's guilty plea and yet disavow the terms of and intent behind the bargain, however, would bring an unacceptable level of instability to the process.

Unquestionably, the district courts may consider conduct from uncharged or dismissed counts for certain purposes under the guidelines. First, such conduct can factor into the offense level as a specific offense characteristic, including victim-related and role-in-the-offense adjustments. See U.S.S.G. § 1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range)); United States v. Sheahan, 31 F.3d 595 (8th Cir. 1994). For example, in this case Harris received a two-level increase to his base offense pursuant to section 3A1.3 of the guidelines because the victim was physically restrained in the course of the robbery that preceded the offense of conviction. In addition, section 4A1.3(e) allows a court to depart from a defendant's criminal history score based on "prior similar adult criminal conduct not resulting in a criminal conviction." Finally, according to section 1B2.1(c) of the guidelines, instances of misconduct to which the defendant stipulates when entering a plea are treated like convictions and trigger application of multiple count analysis as set forth in sections 3D1.1-1.5. It was the application of this provision to the original plea agreement that led to the parties' joint motion to withdraw Harris's guilty plea to count I so that his sentence would more accurately reflect the parties' intentions.

The circuit courts are divided, however, on the question of whether conduct from dismissed counts may be used as a basis for an upward departure under section 5K2.0. Although we note that each case implicates a different constellation of variables under the guidelines, our holding is generally consistent with the Third and Ninth Circuits. See United States v. Thomas, 961 F.2d 1110, 1120

6

21 (3rd Cir. 1992) (holding that the district court erred by departing upward to compensate for the government's decision not to charge the defendant with a more serious crime); United States v. Faulkner, 952 F.2d 1066, 1069-71 (9th Cir. 1991) ("It would be patently unfair if the court were allowed to hold [the defendant] to his part of the bargain--his plea of guilty to five counts--while simultaneously denying him the benefits promised him from the bargain by relying on the uncharged and dismissed counts in sentencing him."); United States v. Castro-Cervantes, 927 F.2d 1079, 1082 (9th Cir. 1990) ("[F]or the court to let the defendant plead to certain charges and then to be penalized on charges that have, by agreement, been dismissed is not only unfair; it violates the spirit if not letter of the bargain."); but see United States v. Kim, 896 F.2d 678, 684 (2nd Cir. 1990) (holding that the court may use conduct in dismissed counts to support an upward departure), followed by, United States v. Ashburn, 38 F.3d 803, 807 (5th Cir. 1994), cert. denied, 115 S.Ct. 1969 (1995) and United States v. Zamarripa, 905 F.2d 337. 341 (10th Cir. 1990).

It is important to recognize that the sentencing court had valid, alternative means to impose a different sentence in this case if that was its objective. First, Rule 11(e) of the Federal Rules of Criminal Procedure gives the court discretion to reject a plea bargain that it believes to be unduly lenient.[5] In addition, the guidelines provide that where a plea agreement includes the dismissal of any charges or an agreement not to pursue potential charges, the court should accept the plea only if it determines that the charges adequately reflect the seriousness of the actual

---

[5]Moreover, Rule 11(e)(4) outlines the procedure the court must follow if it rejects a plea agreement. Among the requirements, the court must inform the defendant that if he or she "persists in a guilty plea . . . the disposition of the case may be less favorable to the defendant than contemplated by the agreement." Fed. R. Crim. P. 11(e)(4). Thus, the rules recognize the reasonable expectation parties' to a plea agreement have in the disposition contemplated by that agreement.

offense behavior and only if the agreement does not undermine the statutory purposes of sentencing or the sentencing guidelines. U.S.S.G. § 6B1.2. Moreover, once it accepted the plea, the court had significant latitude in applying the guidelines. For example, the court could have made its own calculations of Harris's offense level and criminal history, rather than accept the calculations embodied in the plea agreement. Moreover, the court could have rejected the government's motion for downward departure pursuant to § 5K1.1. All of these options represented known risks to Harris when he entered into a bargain with the government. The district court chose not to exercise any of these options.

The court was not entitled to defeat the parties' expectations by imposing a more severe sentence using Harris's role in the armed robbery that preceded the offense of conviction to depart upward pursuant to § 5K2.0. For that reason, we remand the case to the district court with instructions either to resentence Harris in a manner consistent with this opinion or to reject the plea agreement and allow Harris the opportunity to withdraw his plea as directed by Rule 11(e)(4) of the Federal Rules of Criminal Procedure.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.