UNITED STATES of America

v.

**Stephen Rydale BOLDEN**

**No. 4:00–CR–00022–01WRW.**

United States District Court, E.D. Arkansas, Western Division.

Aug. 14, 2003.

Robert J. Govar, Angela S. Jegley, U.S. Attorney's Office, Eastern District of Arkansas, Little Rock, AR, for U.S. Attorneys.

John W. Walker, John W. Walker, P.A., Reginald S. McCullough, McCullough Law Firm, Little Rock, AR, for Stephen Rydale Bolden, defendant.

## MEMORANDUM OPINION AND ORDER

WILSON, District Judge.

### I. INTRODUCTION

Defendant Stephen Rydale Bolden ("Defendant" or "Bolden"), the kingpin of a drug distribution conspiracy charged in the first count of the original indictment in this case, caused the ill-gotten gains to be laundered.[1] If Mr. Bolden had been convicted of counts 1 through 34, he would have had a guideline range of 360 months (30 years) to life.[2] Based on the evidence as a whole, I am satisfied that Mr. Bolden would have been convicted on all counts, had he gone to trial. His two confederates, who were considerably less involved than Mr. Bolden, exercised their right to a trial by jury, and were convicted. One co-defendant received a sentence of ten years; the other received a sentence of ten years and two months. In other words, the kingpin's helpers got a ten-year prison bonus for going to trial.

On August 15, 2002, the same day the other two defendants were sentenced, Mr. Bolden appeared and pled guilty to one count of misprision of a felony ("misprision"), under a written plea agreement.

For this offense, there is a statutory maximum of 36 months' incarceration. The original indictment against him was dismissed. The Presentence Investigation Report ("presentence report") subsequently recommended a guidelines range of 0–6 months for Mr. Bolden's misprision conviction under the United States Sentencing Guidelines ("guidelines"). Mr. Bolden was not a cooperating witness; therefore, the plea agreement was apparently a reward solely for his plea of guilty, a 29½-to 30-year concession. For reasons explained below, I departed upward and sentenced Mr. Bolden to the statutory maximum of three years.

Mr. Bolden appealed his sentence and the Government filed a Motion for Remand for Resentencing, alleging that I sentenced him for uncharged conduct (which I did), contrary to the Eighth Circuit's holding in *United States v. Harris*.[3] The Eighth Circuit summarily remanded for resentencing-I say "summarily" because the remand order did not contain specific directions.

Because of the prosecution's assertion in its Motion for Remand, I assume the Eighth Circuit relied on *Harris*, a case I believe to be inapposite. While I do not believe *Harris* is controlling in this case, or that I am not permitted to consider Mr. Bolden's uncharged or dismissed conduct, this conduct is relevant for only three months of the 36–month sentence I announced last Friday, August 8, 2003. Otherwise, I depart upward based upon Mr. Bolden's plea of guilty to the crime of misprision, because he is actually guilty of

---

1. This activity is reflected in counts two through thirty-four of the original indictment.

2. This range assumes that a jury would find Mr. Bolden guilty of conspiracy and hold him liable for 164 kilograms of cocaine, and that he would still receive the four-level enhancement under the guidelines based on his leadership role in the conspiracy. However, even if he did *not* receive a four-level enhancement, Mr. Bolden's sentence would have been between 235 and 293 months, rather than the 36 months' confinement to which he was sentenced.

3. 70 F.3d 1001 (8th Cir.1995).

the felony underlying the misprision conviction.[4]

Insofar as *uncharged conduct* is involved, which makes three months' difference in this case, I believe that *Harris* is not controlling for two reasons: (1) Mr. Bolden was specifically advised during the plea proceeding that I might depart above the guidelines, despite the plea agreement and despite recommendations of counsel; and (2) he was given the option of withdrawing his plea several times, as well as the option of withdrawing from the plea agreement altogether. Thus, I do not agree with the assertion that the original three-year sentence violated *Harris*. If I am wrong in this assumption, with respect to the three extra months given in the current sentence, I rest assured that the Eighth Circuit will not hesitate to advise me.

## II. HISTORY

Stephen Bolden, Gerald Ghant, and Gregory R. Nichols were charged in a 35–count indictment for conduct which occurred between September 1, 1994, and July 15, 1998. The first count charged all

three with conspiracy to distribute and possession with intent to distribute cocaine, a violation of 21 U.S.C. § 846. Counts 2 through 34 charged only Mr. Bolden for evading the reporting requirements for currency transactions, a violation of 31 U.S.C. § 5313(a), and Count 35 was a forfeiture count against all three defendants. Mr. Ghant and Mr. Nichols both moved to have their trial severed from Mr. Bolden. He did not object, and their motions were granted.[5]

After they were convicted by a jury, co-defendants Ghant and Nichols appeared before me on August 15, 2002, for sentencing. *Over the prosecution's objection,*[6] I departed downward and sentenced Mr. Ghant to 126 months' imprisonment and five years' supervised release, and ordered him to pay restitution in the amount of $5,000, as well as a $5,000 fine. I also departed downward and sentenced Mr. Nichols to 120 months' imprisonment and five years' supervised release, and ordered him to pay restitution and a fine.[7]

That same day, on August 15, 2002, Mr. Bolden pled guilty under a written plea agreement to a one-count Superseding Information charging him with misprision.[8]

---

**4.** *See United States v. Warters,* 885 F.2d 1266 (5th Cir.1989).

**5.** Tr. of Mot. Hr'g at 62, lines 23–25 (September 6, 2000). Mr. Nichols' lawyer asked that his client be severed from the other two defendants, but particularly from Mr. Bolden, claiming that Mr. Bolden alone was responsible for the multiple financial transactions set forth in the indictment. Mr. Ghant's lawyer concurred with this assessment, noting that "a severance for Mr. Ghant from Mr. Nichols [was not] as critical," but that his client really wanted to be severed from Mr. Bolden. *See id.* at 4–5, 62.

**6.** Tr. of Ghant Sentencing Hr'g at 61–63, 65 (August 15, 2002).

**7.** The Government did not object to the downward departure for Mr. Nichols. *See* Tr. of Nichols Sentencing Hr'g at 5 (August 15, 2002).

**8.** 18 U.S.C. § 4. In the plea agreement, the parties agreed to recommend a two-level reduction because of Mr. Bolden's acceptance of responsibility. The plea agreement stipulated that neither party would seek any additional sentencing enhancements or reductions, and the Government agreed not to oppose home confinement. The Government also agreed to dismiss the drug charge in the first count if Mr. Bolden pled guilty of the offense contained in the Superseding Information. In return, Mr. Bolden dismissed all pending lawsuits against United States Department of Justice officials and any other law enforcement officials who participated in the underlying investigation and indictment. The parties arrived at a preliminary calculation of the guidelines which appeared to result in an offense level of nine and a guideline range of four to ten months.

I advised him that the maximum penalty for misprision was not more than three years, with a possible fine of not more than $250,000, or both; and that he could receive up to one year of supervised release.[9] After reading the Superseding Information to Mr. Bolden,[10] I advised him that:

> [U]nder [the] guidelines, there will be a presentence report ..., [which] you and your lawyers [and the Government] will get .... The presentence report establishes tentative facts and a *tentative guideline range* .... [w]e will then go to sentencing.[11]

I also informed Mr. Bolden that he was entitled to contest the presentence report,[12] and explained that I am required to sentence him within the sentencing guideline range "unless [his] case is highly unusual."[13] Then, the following discussion occurred:

> The Court: I can depart upward[ ] in some instances, if your case is atypical, as the guidelines call it, or I can depart below the range if your case is atypical. You won't worry about me at this point, at least, departing below the guideline range, *but I want to advise you that it is possible for me to go above the guideline range.* Do you understand that?
> The Defendant: Yes, sir.

The Court: Now if your guideline range turns out to be higher than you expected based on—*and I've read the plea agreement,* but if it turns out to be higher than you expect, that would not give you a right to withdraw your plea of guilty. Do you understand that?
The Defendant: Yes, sir.[14]

I later informed Mr. Bolden that, regardless of his lawyers' and the Government's recommendation concerning the appropriate sentencing range, I was not required to sentence Mr. Bolden according to the parties' recommendation.[15] Several paragraphs support this statement, primarily paragraph 2(f), in which the parties stipulated that:

> While the parties recognize that the Court is not a party to plea agreements between the United States and Defendants in criminal matters, the parties have arrived at a preliminary calculation of the guidelines which appears to result in an applicable offense level of 9, with a resultant Guideline range of 4 to 10 months.

The plea agreement provides, in part, that:
THE DEFENDANT UNDERSTANDS THAT THE DISTRICT COURT IS NOT BOUND BY THESE STIPULA-

---

**9.** Tr. of Waiver of Indictment and Guilty Plea at 2, lines 17–22 (August 15, 2002).

**10.** The Superseding Information charged that:

> On or about September 1, 1994, and continuing thereafter, through July 15, 1998, in the Eastern District of Arkansas, Stephen Rydale Bolden, having knowledge of the actual commission of a felony, cognizable by a Court of the United States, to wit: knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, did structure and attempt to structure transactions with domestic financial institutions, concealed and did not as soon as

possible make this known to some judge or other person in civil or military authority under the United States, in violation of Title 18, United States Code, Section 4.

*See also* Tr. of Waiver of Indictment and Guilty Plea at 6–7.

**11.** Tr. of Waiver of Indictment and Guilty Plea at 9, lines 11–23 (emphasis added). Mr. Bolden answered "Yes, sir" to the question.

**12.** *Id.* at 9, lines 24–25.

**13.** *Id.* at 10, lines 4–5.

**14.** *Id.* at 10, lines 7–20 (emphasis added).

**15.** *Id.* at 15, lines 4–7.

TIONS. THE DEFENDANT FUR-THER UNDERSTANDS THAT IF THE DISTRICT COURT DOES NOT ACCEPT THE STIPULATIONS, THE DEFENDANT IS NOT ENTITLED TO WITHDRAW HIS GUILTY PLEA. Finally, the parties indicated that the Government "informed the defendant that the determination of the applicability of the guidelines and of the appropriate sentence is within the sole discretion of the District Court." [16]

Mr. Bolden indicated that he understood that I was not bound by the plea agreement and had considerable discretion; nonetheless, he asked me to accept it because it was in his "best interest." [17] I accepted Mr. Bolden's plea of guilty, and the Assistant United States Attorney ("AUSA") moved to dismiss the original indictment against him. Mr. Bolden's sentencing hearing was scheduled for November 22, 2002, and a presentence report was ordered. When he appeared for his sentencing hearing, I advised the parties that I was considering an upward departure by stating:

> [A]fter reviewing the presentence report and thinking about the earlier trials, I'm going to put the defendant . . . on notice that I am going to consider an upward departure in this case. His codefendants here each received 120–month sentences, and their cases were severed because I . . . considered Mr. Bolden [to be] the mastermind of this offense and that would adversely affect the codefendants' ability to get a fair trial.

I don't believe that Mr. Bolden's culpability or role in the offense is adequately reflected by the guideline imprisonment range, and I believe under guideline 5K2.0, there are aggravating circumstances of a nature that are not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and an upward departure may well be warranted. [18]

Mr. Bolden's sentencing hearing was then rescheduled for December 19, 2002, to allow him to prepare arguments against an upward departure. [19] After the November 22, 2002, hearing, I sent a letter to the lawyers of record, reiterating that I might depart upward because:

> [T]he defendant's culpability and role in the offense are not . . . adequately reflected by the guideline imprisonment range. Therefore, under U.S.S.G. § 5K2.0, there exists an aggravating circumstance of a kind that was not adequately taken into consideration by the sentencing commission in formulating the guidelines. [20]

Three days later, on November 25, 2002, I sent a written request to all parties, asking Mr. Bolden's lawyers to file a short brief giving any factual and legal reasons why I should not depart upward. [21] Mr. Bolden filed a Motion for Recusal and an Objection to the Process on December 16, 2002. [22] This motion was denied in an Order dated December 18, 2003. [23]

During Mr. Bolden's December 19, 2002, sentencing hearing, I again noted that,

---

16. Doc. No. 254.

17. Tr. of Waiver of Indictment and Guilty Plea at 17, lines 4–8.

18. Tr. of Hr'g at 2, lines 6–21 (November 22, 2002) (emphasis added).

19. *Id.* at 2, lines 22–25.

20. Doc. No. 276.

21. Doc. No. 278.

22. Docs. No. 279 and 281.

23. During the hearing held March 14, 2003, Mr. Bolden renewed his objections, and I reaffirmed my decision to deny his request for recusal. *See* Tr. of Sentencing Hr'g—Vol. II at 34, lines 1–2.

under the Sentencing Reform Act, I am required to select a sentence from within the guideline range; however, I reiterated that I am permitted to depart from the guidelines and sentence him outside of the prescribed range if his case presented "atypical features." [24] Then, I found that "Mr. Bolden was the kingpin of the Ghant/Nichols/Bolden conspiracy, and the evidence at trial tended to-or did support that." [25] Based on this conclusion, I anticipated departing upward from the guidelines.

Mr. Bolden's lawyers objected on several grounds. First, his lawyers asserted that Mr. Bolden was not at the trial of Mr. Ghant and Mr. Nichols and, therefore, did not have an opportunity to confront or cross-examine any of the witnesses. Second, the lawyers insisted that "with respect to the charge of kingpin, there is a presumption of innocence." Finally, they maintained that there was "nothing before the court ... to indicate that [Mr. Bolden was] the kingpin." [26] Although I did not agree with these points, I postponed the sentencing hearing until March 14, 2003, nearly three months, to give Mr. Bolden's lawyers adequate time to review the entire transcript of the Ghant/Nichols trial. [27] The lawyers later assumed me that they had reviewed the entire transcript.

When the parties appeared at the March 14 hearing, I asked Mr. Bolden if there was any reason I should allow him to withdraw his plea of guilty. [28] At that time, one of his lawyers argued that I should not depart upward because I had accepted his guilty plea. [29] He then asked whether I would allow Mr. Bolden to withdraw his plea and reset the matter for trial. I informed counsel that I needed to know if Mr. Bolden wanted to withdraw his plea of guilty and return to the original 35–count indictment, [30] and Mr. Bolden's lawyer responded that his client felt compelled to go forward with his plea because "the options [were] not that great." [31] Counsel again objected that Mr. Bolden was not represented by counsel at the trial of Mr. Ghant and Mr. Nichols; that statements of counsel during the Ghant/Nichols proceedings were not made under oath; and that the witnesses at the trial were not subject to cross-examination by Mr. Bolden's lawyers. [32]

After reiterating that the plea agreement specifically gave me sole discretion to determine the "applicability of the guidelines and of the appropriate sentence," [33] I concluded that Mr. Bolden's case is outside the heartland of what the guidelines contemplated. [34] Accordingly, I sentenced him to the statutory maximum of thirty-six months, based in part upon my conclusion that he was at least as culpable as Ghant and Nichols and was probably the "kingpin." [35] I informed the parties that my decision was based on evidence presented during pre-trial hearings, the tape recordings submitted during the trial, and other evidence during Mr. Ghant's and Mr. Nich-

---

24. Tr. of Sentencing Hr'g—Vol. I at 4, lines 16–20 (December 19, 2002).

25. *Id.* at 12, lines 16–18.

26. Tr. of Sentencing Hr'g—Vol. I at 17–18.

27. *Id.* at 22–23.

28. Tr. of Sentencing Hr'g—Vol. II at 30, lines 13–14 (March 7, 2003).

29. *Id.* at 30–31.

30. *Id.* at 31, lines 23–25.

31. *Id.* at 31, lines 4–6.

32. *Id.* at 33, lines 15–21.

33. Tr. of Sentencing Hr'g—Vol. II at 43.

34. *Id.* at 62, lines 3–7.

35. *Id.* at 61, lines 6–8. Absent a departure, the guidelines prescribe a sentence ranging from zero to six months.

ols' trial which established that Mr. Bolden was, in fact, the "kingpin," or the "mastermind" behind the events leading to the charges against the three defendants.[36]

Although I sentenced Mr. Bolden to three years' incarceration, I ordered that he be placed on home confinement with electronic monitoring until July 11, 2003.[37] He appealed his sentence to the Eighth Circuit Court of Appeals, and on May 29, 2003, the Government filed a Motion for Remand for Resentencing, which stated that:

> The decision in *United States v. Harris* stands for the proposition that a district court abuses its discretion by departing upward based upon Section 5K.2 of the United States Sentencing Guidelines where the departure is grounded on dismissed conduct pursuant to a plea agreement entered into by the parties. In the instant case, while the current version of the sentencing guidelines provides for a district court to take into account dismissed or uncharged conduct for sentencing purposes pursuant to Section 5K2.21, the 1997 sentencing guidelines which were used to compute Mr. Bolden's guideline range did not permit dismissed or uncharged conduct to be used for sentencing purposes.[38]

The Eighth Circuit remanded the case "for further proceedings," without ruling on the merits.[39] A resentencing hearing was scheduled for Friday, August 8, 2003. In an Order dated June 30, 2003, I notified the parties that I might depart upward during the sentencing hearing because "I [still] consider [Mr. Bolden's] actions to lie outside the heartland of the cases covered by U.S.S.G. § 2X4.1 based on his extensive involvement in the structuring of transactions and concealment of the source of the funds, and ... I am of the opinion that this case is distinguishable from *United States v. Harris,*[40] leaving U.S.S.G. § 5K2.21 aside." [41]

## III. DISCUSSION

Having reviewed the evidence again, I am even more satisfied that Mr. Bolden was the "kingpin" or "mastermind" behind the conspiracy charged in the first count of the original indictment. Although his lawyers have always contended that the evidence I rely on for this conclusion is not credible, they had numerous opportunities, during several sentencing hearings, to rebut the evidence I have relied upon; they failed to do so. I also believe that a departure is warranted because Mr. Bolden is guilty of the felony underlying his misprision conviction.

Therefore, because "aggravating circumstances of a nature that are not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" exist, I again depart upward and sentence Mr. Bolden to 36 months' confinement in the Bureau of Prisons, under U.S.S.G. § 5K2.0. A term of supervised release of

---

**36.** *Id.; see also* Tr. of Waiver of Indictment and Guilty Plea at 2, lines 17–22. I have stated, and continue to maintain, that the evidence presented at the Ghant/Nichols trial supported the Government's representations that Mr. Bolden was the mastermind behind the conspiracy. *See* Tr. of Sentencing Hr'g— Vol. I at 12, lines 13–20.

**37.** Mr. Bolden's home confinement was subsequently modified by an Order dated June 30, 2003, which provided that Mr. Bolden should remain on home confinement until his resentencing hearing.

**38.** United States' Motion for Remand for Re–Sentencing, Case No. 03–1771 (May 29, 2003).

**39.** *United States v. Bolden,* No. 03–1771, "Judgment" (June 11, 2003).

**40.** 70 F.3d 1001 (8th Cir.1995).

**41.** Doc. No. 301.

one year will follow his confinement, and he is ordered to pay a $10,000 fine.

### A. The Sentencing Guidelines

 The United States Sentencing Guidelines provide that if a sentencing court finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described,"[42] the trial judge has discretion to depart from the applicable guideline range. However, "any departure must be based on 'sufficiently reliable' factual findings supported by the record,"[43] and the defendant must be given notice and an opportunity to challenge or explain the evidence used against him.[44] Finally, a sentencing court must provide a "reasoned explanation, consistent with the guidelines, justifying its departure."[45] Alternatively, Rule 11(e) of the Federal Rules of Criminal Procedure allows a district court to reject a plea bargain if it concludes that the agreement is "unduly lenient,"[46] or if the charges provided for in the plea agreement do not "adequately reflect the seriousness of the actual offense behavior."[47]

### B. Dismissed Counts and the Ex Post Facto Clause

Mr. Bolden contends that the ruling in this case violates the *ex post facto* clause of the United States Constitution.[48] Specifically, he asserts that when the conduct giving rise to the charges in this case occurred, the guidelines, as interpreted by the Eighth Circuit, did not permit a sentencing court to base its decision to depart upward on dismissed or uncharged conduct; only later were the guidelines amended to permit a sentencing court to permit such conduct.

 Sentencing courts typically "apply the guidelines in effect at the time of sentencing"[49] if an amendment added after the defendant's conduct is "retroactive," or is only "intended to clarify application of a guideline [and] 'was not intended to make any substantive changes to [the guidelines] or [their] commentary.'"[50] However, the Eighth Circuit has held that the guidelines are governed by the limitations of the *ex post facto* clause.[51] Thus, if the guidelines in

---

**42.** U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)); *see also Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) *and McCarthy*, 97 F.3d at 1581.

**43.** *United States v. Bougie*, 279 F.3d 648, 650 (8th Cir.2002).

**44.** *Id.* at 651–52 (remanding the case to the district court for resentencing to allow the defendant to have an opportunity to refute testimony used against him). *See also Burns v. United States*, 501 U.S. 129, 135–36, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) (reasoning that "it makes no sense to impute to Congress an intent that a defendant have the right to comment on the appropriateness of a *sua sponte* departure, but not the right to be notified that the court is contemplating such a ruling").

**45.** *United States v. Warters*, 885 F.2d 1266 (5th Cir.1989).

**46.** *Harris*, 70 F.3d at 1004.

**47.** *Id.* (remanding the case to the district court with instructions either to resentence the defendant, or to reject the plea agreement and allow Harris to withdraw his plea); *see also* U.S.S.G. § 6B1.2.

**48.** *See* U.S. Const. art. I, § 9.

**49.** *United States v. Comstock*, 154 F.3d 845, 848 (8th Cir.1998);

**50.** *United States v. Davidson*, 283 F.3d 681, 685 (5th Cir.2002) (quoting *United States v. Gross*, 26 F.3d 552, 555 (5th Cir.1994)).

**51.** *United States v. Reetz*, 18 F.3d 595, 597 (8th Cir.1994).

effect at the time of sentencing will produce a sentence harsher than those in effect at the time the crime was committed, a violation of the *ex post facto* clause occurs.[52]

In *United States v. Harris*, the Eighth Circuit held that a sentencing court may not consider "conduct from [a] dismissed count as the basis for an upward departure under U.S.S.G. § 5K2.0, in clear opposition to the intentions of the parties as embodied in their plea agreement."[53] The *Harris* court noted that "[m]eaningful plea bargaining requires a degree of trust between defendants and prosecuting bodies ... [thus], district courts should be wary of conduct which tends to undermine the trust [defendants] place in the deals they strike with prosecutors."[54]

▮ Based on the specific facts of this case, I believe the *Harris* case is distinguishable, and that I *am* permitted to consider Mr. Bolden's dismissed charges for sentencing purposes, without violating the *ex post facto* clause. First, in the plea agreement, Mr. Bolden was advised that "the determination of the applicability of the guidelines and of the appropriate sentence is within the sole discretion of the district court."[55] Second, before I ever accepted the plea agreement, I specifically advised him that I might depart upward, notwithstanding the plea agreement or the agreement and recommendations of his lawyers, if his case presented atypical features.

At the September 6, 2000, motions hearing, during which I severed Mr. Bolden's trial from that of Mr. Ghant and Mr. Nichols, the AUSA asserted that Mr. Bolden took the money he made from selling drugs and violated the restructuring statute by transferring money into various accounts in order to avoid the reporting requirements.[56] During Mr. Bolden's plea hearing, the AUSA again asserted that Mr. Bolden was properly charged in the indictment with the other co-defendants, and that the Government viewed him as the "mastermind" of the drug activity alleged in the original indictment. Even Mr. Bolden's lawyer conceded that "it was always [Mr. Bolden's] money ... that was involved."[57] Thus, before the trial even

**52.** *Id.* at 597–98.

**53.** *Harris,* 70 F.3d at 1003. In so holding, the Eighth Circuit recognized a split among the circuits on this issue before siding with the Third and Ninth Circuits. *See also United States v. Thomas,* 961 F.2d 1110, 1120–21 (3d Cir.1992) (holding that the district court erred by departing upward to compensate for the Government's decision not to charge the defendant with a more serious crime) and *United States v. Faulkner,* 952 F.2d 1066, 1069–71 (9th Cir.1991) (noting that "it would be patently unfair if the court were allowed to hold [the defendant] to his part of the bargain ... while simultaneously denying him the benefits promised him from the bargain by relying on the uncharged and dismissed counts in sentencing him."). In contrast, the Second, Fifth, and Tenth Circuits held that a district court could permissibly consider dismissed counts to support an upward departure. *See United States v. Kim,* 896 F.2d 678, 684 (2d Cir.1990); *United States v. Ashburn,* 38 F.3d

803 (5th Cir.1994); *and United States v. Zamarripa,* 905 F.2d 337, 341 (10th Cir.1990).

**54.** *Harris,* 70 F.3d at 1003 (quoting *United States v. Shields,* 44 F.3d 673, 675 n. 2 (8th Cir.1995)). The court qualified its holding by allowing district courts to "consider conduct from uncharged or dismissed counts for certain purposes," such as "role-in-the-offense adjustments." *See id.; see also United States v. Duncan,* 29 F.3d 448, 451 (8th Cir.1994) (holding that the district court did not err in declining to reduce the defendant's offense level when the defendant's offense was more than minor because the defendant managed the investors' money and handled the finances for the company).

**55.** Doc. No. 254.

**56.** Tr. of Mot. Hr'g at 9, lines 1–4;

**57.** Tr. of Waiver of Indictment and Guilty Plea at 18, lines 18–19.

began, Mr. Bolden *appeared* to have a greater degree of culpability than Mr. Ghant and Mr. Nichols, and there were 32 additional charges against him.[58]

■ Mr. Nichols and Mr. Ghant were tried under the first count of the indictment beginning February 1, 2002. Both defendants were convicted of conspiracy to distribute and possession with intent to distribute cocaine on February 16, 2002. During the trial, the evidence further implicated Mr. Bolden. Although some of the evidence may be hearsay as to Mr. Bolden, the guidelines permit me to consider reliable hearsay.[59] However, some of the core evidence against Mr. Ghant and Mr. Nichols, as far as the conspiracy charge is concerned, were statements made by Mr. Bolden himself during recorded telephone conversations. Furthermore, as noted above, Mr. Bolden and his lawyers had ample time to gather and present rebuttal information, but chose not to do so.

Special Agent Dixon Allan Land of the Federal Bureau of Investigations was the first witness called by the Government during the Ghant/Nichols trial. Agent Land testified that he applied for and received permission to intercept telephone calls made from Mr. Bolden's telephones in January 1998. Agent Land testified that officers intercepted approximately 7,500 telephone calls between Mr. Ghant and Mr. Bolden; the vast majority of which were from Mr. Bolden.[60] The tapes were played during the trial, and the jurors were simultaneously permitted to view the transcripts of the conversations.[61] On cross-examination, Mr. Ghant's lawyer established that the investigation was initially directed at Mr. Bolden, and not necessarily at the other two defendants.[62]

During the Ghant/Nichols trial, defense counsel argued that the taped conversations were too ambiguous to be considered to be incriminating evidence. The jury did not accept this argument and neither would I, had I been the trier of fact. From the testimony and evidence presented at the trial, I concluded that Mr. Bolden was more culpable than either Mr. Ghant or Mr. Nichols, and that he was definitely the mastermind behind the conspiracy charged in the first court of the original indictment.

After Mr. Bolden pled guilty, the United States Probation Office prepared a presentence report. In the report, the investigating officer advised the court that, under "U.S.S.G. § 1B1.3(a), the Defendant should be held responsible for all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused. This will include the dismissed counts."[63] Mr. Bolden has never

---

**58.** The Government represented that the additional charges against Mr. Bolden were tied to the conspiracy charge-that is, the 32 structuring counts were tied to the drug transactions included in the conspiracy alleged in the first count.

**59.** *See United States v. Granados,* 202 F.3d 1025, 1029 n. 2 (8th Cir.2000) (citing *United States v. Weekly,* 118 F.3d 576, 582 (8th Cir. 1997)).

**60.** Tr. of Ghant/Nichols Trial—Vol. I, at 160. Government's Exhibits 1 through 17 are transcripts of recorded conversations. Agent Land explained that he was able to identify

Mr. Bolden and Mr. Ghant because, among other things, Mr. Bolden was the primary user of his two telephones. Agent Land learned to identify Mr. Bolden's voice. Moreover, when Mr. Ghant was stopped with money in his car, he called Mr. Bolden. *See id.* at 162, lines 20–25, and at 163, lines 1–12.

**61.** Although there may have been minor discrepancies between the transcripts and the tapes, the discrepancies were insignificant.

**62.** Tr. of Ghant/Nichols Trial—Vol. I at 164.

**63.** Presentence Investigation Report for Stephen Rydale Bolden, ¶ 12.

objected to this language in the presentence report.

The holding in *Harris* is based primarily on the Eighth Circuit's recognition that a sentencing court should not be permitted to hold the defendant to a plea agreement, while simultaneously denying him the benefit of his bargain, by relying on uncharged and dismissed counts in sentencing him. Perhaps the most crucial distinction between the *Harris* and this case is that Mr. Bolden was given several opportunities to withdraw his plea and he declined to do so.

I first asked Mr. Bolden on March 14, 2003, whether he wanted to withdraw his plea and go back to the original 35–count indictment. His lawyer indicated that Mr. Bolden wanted to go forward with the sentencing hearing. On August 1, 2003, I advised Mr. Bolden that he should file a motion to withdraw his plea of guilty, if he so chose, no later than August 6, 2003.[64] When no such motion was filed, at the beginning of his resentencing hearing, held August 8, 2003, I specifically asked Mr. Bolden if he wanted to withdraw his guilty plea. He replied that he did not. Therefore, I believe that the Eighth Circuit's holding in *United States v. Harris* is not controlling in this case.

 Because I believe that Mr. Bolden was the kingpin of the Ghant/Nichols/Bolden conspiracy, and the evidence at the trial supported that conclusion, I believe that his case is atypical. Therefore, I may depart upward based on the dismissed counts of the original indictment. Be that as it may, the facts underlying the dismissed count account for only three months of the 36–month sentence.

## C. Misprision of a Felony

 Although I believe I have the discretion to depart upward based on Mr. Bolden's role in the Ghant/Nichols/Bolden drug conspiracy, I hold that I may still depart upward under the guidelines, without considering the uncharged conduct, because Mr. Bolden is guilty of the felony underlying his plea; namely, he structured transactions to avoid reporting requirements. He admitted as much during his plea hearing.[65]

 Mr. Bolden pled guilty to misprision, a violation of 18 U.S.C. § 4, which provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

Misprision has been defined as the "concealment of a felony without giving any degree of maintenance to the felon"[66] and

---

**64.** Doc. No. 305.

**65.** *See United States v. Fortier,* 242 F.3d 1224, 1232 (10th Cir.2001) (holding that, on remand, "a district court may resentence a defendant on different grounds, considering different enhancements or departures, as long as they are not foreclosed by the scope of the appellate decision."). *See also United States v. Smith,* 116 F.3d 857, 859 (10th Cir.1997) (holding that, on remand, the "district court is free to reconsider the sentencing package *de novo* unless the appellate court limits the district court's discretion on remand.").

**66.** *United States v. Perlstein,* 126 F.2d 789 (3d Cir.1942), *cert. denied* 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942); *see also* 21 Am. Jur.2d Crim. Law § 33 (defining "misprision" as the "failure to act so as to prevent a felony from being committed," or "failure to act so as to bring a known felon to justice," or both, "without such previous concern with, or subsequent assistance to the felon as would render the concealer of the felony an accessory before or after the fact").

consists of four elements, including: (1) the commission and completion of a felony; (2) the defendant's knowledge of that fact; (3) the defendant's failure to notify the proper authorities; and (4) an affirmative step by the defendant to conceal the felony.[67] Under the guidelines, the base offense level for misprision is nine levels lower than the offense level for the underlying offense, but in no event less than four, or more than nineteen.[68] The Commission defined "underlying offense" as "the offense as to which the defendant is convicted of committing the misprision."[69]

I cannot find that the Eighth Circuit has ever addressed an upward departure on a misprision conviction; however, this issue has been addressed by other courts. The seminal case is *United States v. Warters*,[70] in which the defendant pled guilty to a charge of misprision and was sentenced to three years' confinement.[71] At Mr. Warters' plea hearing, the Government stated that the defendant, by contributing $20,000, participated in the underlying conspiracy to purchase and distribute drugs.[72] The Fifth Circuit interpreted Mr. Warters' responses to the district judge's questions regarding his failure to report the crime to the authorities as an agreement with the prosecutor's statements. Nonetheless, the court remanded the case to the district court, ordering the district judge to list specific findings regarding the amount of marijuana and to provide a detailed justification for his decision to depart from the guidelines.[73]

Similarly, in *United States v. Pigno*,[74] the Government implicated Mr. Pigno in the underlying offense, and he did not object. Instead, the defendant admitted that the Government's statements were accurate, as they related to him.[75] In that case, the presentence report stated that "a recent case by ... the Fifth Circuit holds that grounds for departure in a case involving the misprision of a felony may exist where the defendant could have been found guilty for the underlying offense itself."[76]

The Fifth Circuit's analysis is based upon its conclusion that "a misprision defendant's personal guilt of the underlying offense is ... not taken into account in formulating the misprision guideline under section 2X4.1."[77] In other words, the guideline for this offense presumes that the defendant *knew* of the underlying felony but did not actually participate in or commit the underlying offense,[78] although such an occurrence is theoretically possible.[79] Thus, although a defendant is typically entitled to a nine-point reduction under U.S.S.G. § 2X4.1, the *Warters* court

---

**67.** 18 U.S.C. § 4. *See also United States v. Cefalu*, 85 F.3d 964 (2d Cir.1996); *United States v. Stuard*, 566 F.2d 1 (6th Cir.1977); *United States v. Ciambrone*, 750 F.2d 1416 (9th Cir.1984); and *United States v. Baez*, 732 F.2d 780 (10th Cir.1984).

**68.** U.S.S.G. § 2X4.1 (1997).

**69.** U.S.S.G. § 2X4.1 app. n. 1.

**70.** 885 F.2d 1266 (5th Cir.1989).

**71.** *Warters*, 885 F.2d at 1269.

**72.** *Id.* at 1270.

**73.** *Id.* at 1272.

**74.** 922 F.2d 1162 (5th Cir.1991).

**75.** *Id.* at 1164.

**76.** *Id.* at 1165. Although the presentence report this case did not list any "factors that may warrant departure" in paragraphs 55–56, Mr. Bolden had sufficient notice that I considered an upward departure and the ground upon which the departure was based.

**77.** *Warters*, 885 F.2d at 1275.

**78.** *United States v. Godbolt*, 54 F.3d 232 (5th Cir.1995).

**79.** *Warters*, 885 F.2d at 1275.

held that, "for [this] *rather unique offense* ... an offense level based only on the accused's guilt of the underlying offense, without the misprision nine-point reduction, constitutes a guidelines departure where the only charge is under 18 U.S.C. § 4." [80]

Quoting the commentary to U.S.S.G. § 1B1.3,[81] the Fifth Circuit added that "a court is not precluded from considering information that the guidelines do not take into account," and that such information "may be considered in determining whether and to what extent to depart from the guidelines." [82] Accordingly, under this guideline, a "district court may depart from the misprision guideline range *if it makes a specific finding that [the defendant is] guilty of the underlying offense.*" [83] This is precisely the case here.

■ When a sentencing court decides to depart upward in a misprision case, it should determine the applicable guideline range for the underlying offense in order to provide an "appropriate benchmark against which to judge the reasonableness of the sentence." [84] These three cases, *Warters, Pigno,* and *Godbolt,* were each decided before Mr. Bolden's offenses occurred in 1997, and each time, the Fifth Circuit concluded that cases in which the defendant is guilty of an underlying offense fall outside the heartland of typical misprision cases because the applicable

guideline presumes that the defendant is not guilty of the underlying felony. Despite his arguments to the contrary, there is overwhelming evidence in the record to support the conclusion that Mr. Bolden is guilty of the underlying offense of structuring transactions to avoid reporting requirements. He *fully admitted this fact* during the plea colloquy.[85]

When Mr. Bolden appeared for a plea hearing on August 15, 2002, the AUSA summarized the evidence the Government would expect to introduce at a trial, asserting that:

> [I]f the matter were to go to trial, [the Government] would expect to prove that ... Mr. Bolden maintained various bank accounts [and] ... that within the time frames outlined in the information, federal law required those financial institutions to report the withdrawal or deposit of more than $10,000 in currency .... [O]n certain dates within March of 1995 ... there was a number of different currency deposits that were made into those various accounts ... [Mr. Bolden] caused them to be made [and] .... ultimately checks were cut from each one of these accounts, either a check or a cashier's check.[86]

The AUSA asserted that Mr. Bolden "knowingly and intentionally [tried] to get around the $10,000 reporting requirement." [87] To support the Government's

---

**80.** *Id.* at 1274 (emphasis added).

**81.** U.S.S.G. § 1B1.4 (1997) provides that: "[i]n determining the sentence to impose within the guidelines range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."

**82.** *Warters,* 885 F.2d at 1274; *see also* U.S.S.G. § 1B1.4 comment. (1997).

**83.** *Id.* at 1275; *see also Godbolt,* 54 F.3d at 234 (emphasis added).

**84.** *Id.*

**85.** Tr. of Waiver of Indictment and Guilty Plea at 23–24.

**86.** *Id.* at 20–21

**87.** *Id.* at 22, lines 13–16. According to the plea agreement and the completed presentence report, Mr. Bolden structured transactions in the amount of $459,162.50, to avoid the reporting requirement. The parties stipulated to his amount for all sentencing purposes.

position, the AUSA indicated that the Government would provide recorded conversations and statements made by Mr. Bolden to other persons. These tapes, according to the Government, illustrated Mr. Bolden's awareness of the reporting requirement and the amount involved in the transactions.[88] Finally, the Government insisted that Mr. Bolden engaged in this conduct "for the purpose of avoiding the transaction reporting requirement knowing that the structuring itself was unlawful ... and [he] concealed or failed to report his knowledge of the [actual commission of a felony] to the authorities as soon as possible." [89]

Once the Government explained what it would hope to prove at trial, Mr. Bolden admitted that he *caused* the deposits to be made with the purpose of avoiding the $10,000 reporting requirement set forth under 31 U.S.C. § 5313(a). After speaking with his attorney, Mr. Bolden clarified that knew about the $10,000 reporting requirement when he caused the deposits to be made.[90] I accepted his plea and ordered a presentence report.[91]

The presentence report also indicated that "Mr. Bolden admitted his involvement in the offense of conviction." According to the report, Mr. Bolden admitted that he gave funds to other people, who then obtained checks in amounts less than $10,000 so that the funds would not have to be reported.[92] Mr. Bolden has also not objected to this language in the presentence report.

The record unequivocally proves that Mr. Bolden not only failed to report a felony to the proper authorities, but that the underlying felony leading to the charge of misprision was actually committed by him. He structured transactions on numerous occasions to avoid reporting the crimes and to avoid detection, to the tune of $459,162.50.

In fine, I am still convinced that Mr. Bolden was the mastermind of the dismissed drug conspiracy, but I am departing upward only three months because of his participation in the drug conspiracy. However, because Mr. Bolden is, by his own admission, guilty of "structuring transactions to evade reporting requirement," [93] an additional upward departure is appropriate, and is a separate, independent ground for doing so, up to 33 months.

## IV. CONCLUSION

The base offense level for misprision of a felony, a violation of 18 U.S.C. § 4, is found in U.S.S.G. § 2X4.1. This guideline establishes a base offense level of nine levels lower than the offense level for the underlying offense, but in no event less than four or more than nineteen. According to the guidelines, the base offense level for the underlying offense of 31 U.S.C. § 5313(a) is found in U.S.S.G. § 2S1.3, which establishes a base offense level of six, plus the number of offense levels from the table in U.S.S.G. § 2F1.1 corresponding to the value of the funds. The amount involved in this case is more than $350,000 but less than $500,000; therefore, under U.S.S.G. § 2F1.1(b)(1)(J), the offense level will be increased by nine points.

Furthermore, Mr. Bolden knew or believed that the funds were proceeds of

---

88. *Id.* at 22, lines 8–11.

89. *Id.* at 22, lines 13–20.

90. Tr. of Waiver of Indictment and Guilty Plea at 23–24.

91. *Id.* at 24.

92. Presentence Investigation Report for Stephen Rydale Bolden, ¶¶ 11–12.

93. *See also* 31 U.S.C. § 5324 *and* 18 U.S.C. § 3571 (outlining the appropriate penalties for a violation of this 31 U.S.C. § 5313).

unlawful activity; therefore, under U.S.S.G. § 2S1.3(b)(1), he will receive a two-level increase. Because he controlled the flow of illegal funds, he will receive a four-level increase under U.S.S.G. § 3B1.1(a), for an offense level of 21. Finally, because Mr. Bolden is guilty of the underlying felony of structuring financial transactions in order to avoid the reporting requirements, he will not receive the typical nine-point reduction; however, he will receive a three-level reduction for acceptance of responsibility.

Based on a total offense level of eighteen and a criminal history category of I, the applicable guideline imprisonment range is 27–33 months, and the fine ranges from $6,000 to $60,000. Mr. Bolden will be sentenced to thirty-three months' incarceration. I also depart upward and sentence him to an additional three months' incarceration, for a total of thirty-six (36) months in the Bureau of Prisons, based upon his role as the kingpin. Mr. Bolden's confinement will be followed by one year of supervised release, and he is ordered to pay a $10,000 fine. His Motion to be Sentenced within the Guidelines Range in the Presentence Investigation Report (Doc. No. 303) is DENIED, and all other pending motions are DENIED as MOOT. An Amended Judgment in a Criminal Case is being filed concurrently.

### V. OBSERVATION

The rigid sentencing guidelines and the proliferation of mandatory statutory minimums generally give the prosecution, one of the adversaries, broad discretion in sentencing, and the judge (supposedly a "detached magistrate") generally has very little discretion. Under the current version of Rule 35 of the Federal Rules of Criminal Procedure, *only* the prosecution is permitted to file a motion for a reduction of a sentence. Before the sentencing guidelines, the lawyer for the defendant *or* the court could effect a reduction under Rule 35.

Mr. Bolden's lesser-involved assistants exercised their constitutional right to a trial by jury, and paid for it with the loss of their freedom for ten or more years. The prosecution apparently believes that Mr. Bolden deserved a 35½—to 36–year reduction solely for pleading guilty. I fail to discern or divine the fairness in this. Before the guidelines and mandatory minimums, and under the previous version of Rule 35, I could have gone a long way toward correcting what I believe to be a serious inequity. Perhaps, however, I am like Edward Arlington Robinson's Miniver Cheevy—I long too much for "days of old."